CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent, vs. McGINLEY, Appellant.

*September 23, 1921—January 10, 1922.*

*Courts: Concurrent jurisdiction of state and federal courts: Federal Employers' Liability Act: Injunction by state court against proceeding in foreign court: Differences in procedure as ground for injunction: Difficulty in presenting case: Attorneys: "Ambulance chasing."*

1. Whenever Congress gives a right which by its terms is not exclusively confined to the jurisdiction of the federal courts, such right may be enforced by a state court; and the jurisdiction of the state court is concurrent with that of the federal court.

2. Under the federal Employers' Liability Act of April 22, 1908, sec. 6, as amended by the act of April 5, 1910, sec. 1, the state courts have concurrent jurisdiction with the federal courts, such act merely recognizing the prior existing jurisdiction of the state courts.

3. The federal act as amended does not prohibit a state court from regulating the conduct of its own citizens by injunction so as to prevent hardship, oppression, or fraud.

4. Equity may enjoin a citizen of this state from prosecuting an action for personal injuries against a railroad company under the federal act in the courts of another state where it is necessary to prevent hardship, oppression, or fraud.

5. The deprivation of the privilege of examining an adverse party before trial as provided by sec. 4096, Stats., does not work such hardship, oppression, or fraud as will warrant enjoining a citizen of this state from prosecuting an action under the federal act in Minnesota where there was no such privilege, both parties being on the same basis in this regard.

6. A citizen of Wisconsin will not be enjoined from prosecuting an action under the federal Employers' Liability Act in the courts of Minnesota because of the fact that in that state a verdict may be rendered by ten jurymen or because the jury will not have an opportunity to examine the premises.   Under such act the injured employee may bring his action in a district wherein the railroad company is doing business.

7. A court of equity is not warranted in enjoining a citizen of this state from prosecuting in a sister state an action for personal injuries sustained in Wisconsin on the ground that a large number of the witnesses reside in this state, making necessary the taking of their depositions instead of oral testimony.

8. Nor will injunction lie because of allegations that his counsel in such other state has been guilty of unprofessional conduct, where such matter is denied generally and has not been established.

APPEAL from an order of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Reversed.*

The appeal is from an order perpetually restraining and enjoining the defendant from maintaining, carrying on, or prosecuting an action begun by the defendant against the plaintiff in the district court of Renville county, in the state of Minnesota, and from maintaining or prosecuting any action in any court or place outside or beyond the limits of the state of Wisconsin, for personal injuries sustained by the

defendant in the city of Janesville, Rock county, Wisconsin.

The facts are stated in the opinion.

For the appellant there was a brief by *Davis & Michel* of Minneapolis, attorneys, and *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, of counsel; and the cause was argued orally by *Ernest A. Michel* and *L. A. Avery.*

For the respondent there was a brief by *H. J. Killilea* of Milwaukee and *Nolan & Dougherty* of Janesville, and oral argument by *Mr. Killilea.*

The following opinion was filed November 15, 1921:

DOERFLER, J.    The part of the injunctional order complained of is as follows:

"It is ordered that the defendant, *Clarence S. McGinley,* his agents, attorneys, and employees, be and they are perpetually restrained and enjoined from maintaining, carrying on, or prosecuting any suit or procedure by him, now instituted in the state of Minnesota, against the *Chicago, Milwaukee & St. Paul Railway Company,* because of, or on account of, any injury sustained by said *Clarence S. McGinley* on or about the 12th day of June, 1920, at the city of Janesville, Rock county, in the state of Wisconsin, and said defendant, his agents and attorneys, are perpetually restrained and enjoined from prosecuting or assisting in the prosecution, or in any manner trying the case of *Clarence S. McGinley* against the *Chicago, Milwaukee & St. Paul Railway Company,* now pending in the district court of Renville county, in the state of Minnesota, and the said *Clarence S. McGinley,* defendant herein, is restrained and enjoined perpetually from in any manner assisting or engaging in the prosecution of said suit, so instituted in the state of Minnesota by him against the *Chicago, Milwaukee & St. Paul Railway Company,* and said *Clarence S. McGinley,* defendant herein, is restrained and perpetually enjoined from maintaining, instituting, conducting, or prosecuting any action to recover for said injury received in the city of Janesville, Rock county, Wisconsin, on or about the 12th day of June, 1920, in any court or place outside and beyond the limits of the state of Wisconsin."

The defendant, at the time he sustained the injuries herein referred to and at all times herein mentioned, was a resident of Rock county, Wisconsin, and on or about June 12, 1920, was engaged as an employee of the plaintiff as a box packer and oiler in the yards of the plaintiff company in the city of Janesville, in said Rock county, and while so employed sustained severe personal injuries. The action of the defendant is based upon the federal Employers' Liability Act of Congress.

The plaintiff, at all times referred to herein, was and is a railway corporation, chartered and existing under the laws of the state of Wisconsin.

Some time after the happening of the accident resulting in defendant's injury the defendant brought the action above referred to against the plaintiff in said Renville county, Minnesota, and such action was pending in such county at the time of the commencement of this action. The grounds for injunction set forth in the complaint are substantially as follows:

1. That the necessary and material witnesses of the plaintiff, being about fifteen in number, reside in the city of Janesville, Wisconsin.

2. That the county of Renville, Minnesota, where the defendant brought his action, is approximately 500 miles from the city of Janesville, where the accident occurred.

3. That if the action be tried in Minnesota, in said Renville county, the plaintiff cannot have its witnesses present and will be deprived of having them testify personally before a jury.

4. That the plaintiff will be deprived of the privilege of having the jury view the premises.

5. That a verdict in Minnesota may be rendered by ten concurring jurors, and that a unanimous verdict of twelve jurors is required in Wisconsin.

6. That the plaintiff, if the action is tried in Minnesota, will be deprived of the privilege of examining the defend-

ant under and pursuant to the provisions of sec. 4096 of the Statutes of Wisconsin previous to trial.

7. That the action is wrongfully brought in the state of Minnesota by the defendant for the purpose of securing an unjust advantage over the plaintiff.

8. That the expense of trying the action in Minnesota will be greater than if the cause is tried in Wisconsin.

9. That the plaintiff will be inconvenienced if the case be tried in Minnesota.

10. That the plaintiff will not receive a fair trial in the state of Minnesota.

It is further alleged in the complaint that defendant's attorneys, in the conduct of their business, maintain an office or bureau by means of which, through clippings from newspapers and various agencies, they ascertain and learn of various accidents and injuries received by railroad employees in the states of Minnesota, Wisconsin, Illinois, and Iowa, and on learning of any accident they personally or through an agent solicit such personal-injury business. In brief, the plaintiff charges the defendant's counsel with having procured the authority to prosecute the personal-injury action by and through means commonly known in the profession as "ambulance chasing."

The defendant in his answer generally denies all the allegations in the plaintiff's complaint upon which an application for an injunction is based.

The first objection of defendant's counsel is embraced in the inquiry set forth in their brief as follows:

"Can a state court, by injunction, limit the jurisdiction and venue provided in personal-injury actions under the Employers' Liability Law of Congress?"

Under the amendment of date April 5, 1910 (36 U. S. Stats. at Large, 291, ch. 143), the federal Employers' Liability Act, among other things, was amended so as to read as follows:

"Under this act an action may be brought in a circuit

court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of the commencing of such action. The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

The real question involved in this case does not embrace a limitation or control of the jurisdiction and venue provided for in the Employers' Liability Act of Congress, but does involve the right of a state court, for certain reasons, to regulate the conduct of its own citizens over whom it has jurisdiction, in such a way as to prevent hardship, oppression, or fraud.

At the time of the enactment of the original Employers' Liability Act the state courts had jurisdiction to try personal-injury actions authorized by the act. In the amendment of 1910 above set forth, no jurisdiction was conferred by the act upon state courts, and, in fact, Congress has no power under the constitution to confer or grant jurisdiction to a state court, excepting only as has been held in *Robertson v. Baldwin,* 165 U. S. 275, 17 Sup. Ct. 326, that Congress can go no farther than to authorize the judicial officers of the several states to exercise such powers in such cases as is ordinarily exercised by officers of courts not of record. The state courts exist under the constitution and laws of the state and their jurisdiction is defined thereunder. State courts may exercise jurisdiction in cases authorized by the laws of the state and not prohibited by the exclusive jurisdiction of the federal courts. By this is meant that wherever Congress gives a right which by its terms is not exclusively confined to the jurisdiction of the federal courts, such rights may be enforced by a state court, and the jurisdiction of the state court is concurrent with the jurisdiction of the federal court. *Houston v. Moore,* 5 Wheat. 1, 27;

*Mondou v. N. Y., N. H. & H. R. Co.* 223 U. S. 1, 32 Sup. Ct. 169 (Second Employers' Liability Cases).

In the latter case cited it was held by the court, Mr. Justice VAN DEVANTER rendering the opinion:

"The laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent and, within its jurisdiction, paramount sovereignty. . . . If an act of Congress gives a penalty [meaning civil and remedial] to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief; because it is subject also to the laws of the United States and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. . . . It is true the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Mr. Chief Justice TANEY in the case of *Ableman v. Booth,* 21 How. 506, 16 Lawy. Ed. 169; and hence the state courts have no power to revise the acts of the federal courts, nor the federal the state, except where the federal constitution or laws are involved. *But this is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied.*"

Prior to the passage of the 1910 amendment the supreme court of Connecticut held that state courts had no jurisdiction of actions brought under the federal Employers' Liability Act. *Hoxie v. N. Y., N. H. & H. R. Co.* 82 Conn. 352, 73 Atl. 754, 17 Ann. Cas. 324. But when the case last cited

reached the supreme court of the United States that court held that the state courts had jurisdiction under the federal act even before the amendment of 1910, and the decision of the supreme court of Connecticut was therefore overruled. So that it can be safely said that by the amendment of 1910 Congress did not confer jurisdiction upon the state courts with respect to the enforcement of rights and remedies under the federal Employers' Liability Act, but that it did limit the jurisdiction of the federal court as is provided for in the act, and defined the jurisdiction of that court as being concurrent with that of the courts of the several states. In fact, the very language used by Congress in the act amounts to a recognition of the jurisdiction of the state courts, for the state courts are not, by the terms of the act, granted jurisdiction concurrent with the federal court, but, on the contrary, the federal court is given jurisdiction concurrent with the state courts, thus recognizing the jurisdiction existing previously to the amendment to the Employers' Liability Act in the state courts.

There is nothing in the federal Employers' Liability Act as amended which is indicative of an intent on the part of Congress to prohibit a court of equity from so regulating the conduct of its own citizens by an injunction as to prevent hardship, oppression, or fraud, and if prior to the passage of such Employers' Liability Act the power existed in a court to grant relief by injunction as indicated, such power continued to exist and now exists.

In *Reed's Adm'x v. Ill. Cent. R. Co.* 182 Ky. 455, 206 S. W. 794, the supreme court of Kentucky uses this language:

"The federal act does not, as we think, take away from the courts the power they possessed before its enactment to restrain the plaintiff in a transitory suit from doing an inequitable and unconscionable thing that would subject the defendant to great and unnecessary cost and inconvenience. Before the passage of this act the plaintiff had exactly the same legal right to institute her action in any court having jurisdiction, in which the railroad company could have been

brought before the court, as she does now to bring it in the three places specified in the act. It therefore seems to us that, if it was allowable in a proper state of case before the act to enjoin the plaintiff from bringing a suit in a court and at a place where under the law she had the right to bring it, it must be equally allowable to do so since the act, because the act merely limits instead of enlarging the places where the suit must be brought, and it confers no more right to bring the suit in the places named in the act than the general law before the act conferred the right to bring the suit at any place where the defendant could be brought before a court having jurisdiction."

In connection with the inquiry raised by defendant's counsel, above referred to, it is proper also to consider the second question raised, namely, Can the circuit court for Rock county restrain the prosecution of an action which is transitory in any court which has jurisdiction of such an action?

That a personal-injury action is transitory is so well established as to require no citation of authorities. A number of cases are referred to and cited by counsel for defendant which hold that where a state creates a transitory action and the act creating the right of action, among other things, provides certain conditions precedent to the commencement of the action, such as the giving of notice, etc., that having once created a transitory action it cannot limit the bringing of such action to the jurisdiction of its own courts and prohibit the prosecution thereof in the courts of foreign jurisdictions, where proper service of the defendant may be made. That this doctrine is well founded cannot be denied; in fact, the correctness of the doctrine is universally recognized by all the decisions that we have been able to find. The propositions, however, contended for by counsel for the defendant in no way are germane to or affect the chief question involved in this case, which is the right of a court of equity to regulate the conduct of its own citizens so as to prevent hardship, oppression, or fraud.

This court, in an opinion rendered by the late Mr. Chief Justice WINSLOW in *Griggs v. Docter,* 89 Wis. 161, 61 N. W. 761, clearly recognizes and approves of a court of equity granting relief by injunction in a proper case, and the opinion recites, among other things: "The jurisdiction of equity in actions of this nature is well established."

Such jurisdiction is also recognized by this court in *Akerly v. Vilas,* 15 Wis. 401.

In High, Injunctions (4th ed.) § 106, the weight of authority as shown by the decisions is set forth as follows:

"And while there is a lack of uniformity, amounting even to a conflict of authority, in the decided cases, the English rule seems to have the support of the clear weight of authority; and the courts of one state will, in a proper case, enjoin persons within their jurisdiction from instituting legal proceedings in other states, or from further proceedings in actions already begun. As we have seen in a preceding section, a distinction is drawn between a court of equity interfering with the action of the courts of a foreign state, and restraining persons within its own jurisdiction from using foreign tribunals as instruments of wrong and oppression. While, therefore, the court will assume no control over the course of the proceedings in the foreign tribunal, it may and will interfere to prevent those who are amenable to its own process from instituting or carrying on suits in other states which will result in injury and fraud."

The doctrine is also well set forth under the subject of "Injunctions" in 14 Ruling Case Law, p. 413, § 114, of the chapter of said work so entitled:

"The jurisdiction rests on the authority vested in courts of equity over persons within the limits of their jurisdiction, to restrain them from doing inequitable acts to the wrong and injury of others, and on the power of the state to compel its own citizens to respect its laws, even beyond its own territorial limits. The court proceeds on the theory that as long as a citizen belongs to a state, he owes it obedience; and that as between states, the state in which he is domiciled has jurisdiction over his person and his personal relations to other citizens of the state. In the exercise of this

power there is no attempt to render the foreign tribunal subject to the control· or direction of the lower court or to, in any way, exercise a supervisory power over it.   There is a clear distinction between an injunction against the proceedings of a court in another state, and the power and authority of such court and one to restrain the personal action of a citizen.   In the first case the court has no jurisdiction, while in the other it proceeds *in personam* against the defendant, directing him to proceed no further in the action, without regard to the fact that the *res* of the controversy may be outside of the territorial jurisdiction of the court, for in such a case the court has the power to compel a party to do all the things necessary according to the *lex loci rei sitæ* which he could do voluntarily to give full effect to the decree against him."

In § 115, p. 414, this work further says:

"No general rule can be laid down as to when the court ought to enjoin a party from prosecuting a suit in a foreign jurisdiction.   Each case must be ruled by its own facts.   If they show that it is necessary and equitable to exercise the power in the orderly administration· of justice, the court should enjoin the party, otherwise not."   See, also, citations of numerous authorities bearing out the text under said section.

In any event, it is claimed by counsel for defendant that the showing made by the plaintiff herein was not sufficient to warrant the interposition of a court of equity to grant the equitable relief prayed for.

Sec. 4096 of the Statutes confers the right upon either party to examine the other before trial, and it is contended .by plaintiff's counsel that, inasmuch as the action of the defendant against the plaintiff was brought in a state court in Minnesota, the prosecution of such action in such court deprives the parties hereto of the benefit of an adverse examination before pleading, as is provided for in the Wisconsin statute.

The privileges of an examination under sec. 4096 refer not to a matter of substantive law, but to one of procedure.

*Kentucky F. Corp. v. Paramount A. E. Corp.* 171 Wis. 586, 178 N. W. 9.

We cannot say that the deprivation of the privilege granted under the Wisconsin statute is of such a nature as will work hardship, oppression, or fraud. Furthermore, both parties with respect to the matter complained of stand on an equal basis. The federal Employers' Liability Act contemplates a number of jurisdictions in which an action brought under this act may be prosecuted, and it is but reasonable to assume that discretionary power is vested in a plaintiff to bring his action in any court having jurisdiction, without being restrained by injunction, so long as the exercise of his right does not so materially interfere with the rights of the other party as to result in fraud, hardship, or oppression.

It is further contended by the plaintiff that the prosecution of defendant's action in the state of Minnesota, where a verdict can be rendered by agreement of ten or more jurors, is a great disadvantage to the plaintiff, and deprives it of the right guaranteed under the constitution and laws of Wisconsin, to a verdict rendered pursuant to the unanimous agreement of the entire jury. The Minnesota statute pursuant to which a verdict may be rendered upon an agreement of ten or more jurors has been declared constitutional by the supreme court of the United States in the case of *Minneapolis & St. L. R. Co. v. Bombolis,* 241 U. S. 211, 36 Sup. Ct. 595.

The act provides, among other things, that the action may be brought in a district where the defendant shall be doing business at the time of commencement of such action. Renville county, Minnesota, being located in such a district, the right of the defendant herein to commence his action in that district cannot in good faith be challenged, and is not challenged in this case. The defendant having been granted the right to select, within the purview of the act, the venue of the action, and the venue being in a state which does not require the unanimous verdict of a jury, it can-

not be said that the decision of the defendant in bringing his action in that district works a hardship, oppression, or fraud against the plaintiff herein. Besides, what has been said with respect to the contention in regard to the discovery statute may properly here be repeated, namely, that the advantages or disadvantages of such a constitutional provision as exists in Minnesota act mutually and with equal force and effect upon both of the parties.

The same reasoning also applies to the contention of the plaintiff herein that the trial of the action in the state of Minnesota deprives the party of a right to have the jury view the premises.

It is further contended by the plaintiff herein that a court of equity should intercede in its behalf and restrain the prosecution of defendant's action in the state of Minnesota for the reason that no power exists in the Minnesota court to compel the attendance of witnesses residing in the state of Wisconsin; and that inasmuch as it has a large number of witnesses, fifteen in number, who reside in the county of Rock in the state of Wisconsin, a distance of about 500 miles from the place of trial in the state of Minnesota, the testimony of such witnesses may have to be taken by deposition, and thus the plaintiff will be deprived of the advantage of having the witnesses personally appear in court and give their testimony.

It is also contended by the plaintiff herein that the production of its witnesses and the attendance of its counsel upon the trial in the state of Minnesota will involve considerable expense, and that the matters above set forth consequently will work a hardship and inequity to the plaintiff.

The court has seriously considered the contention last referred to, and is of the opinion that this contention is not entirely without merit. The court fully recognizes the importance to a party of having its witnesses appear personally in court. It also appreciates what is claimed by the plaint-

iff that the attendance of the Wisconsin witnesses upon the trial in the Minnesota court involves some considerable expense. It cannot be denied that a situation may be presented where the selection of a forum may work hardship or oppression. However, the action was brought in 'a neighboring state, and, while the distance may be considerable, we cannot say we are satisfied that such selection of a forum on the part of the defendant herein for the trial of his action will work such hardship or oppression as to warrant the intervention of the powers of a court of equity to restrain the further prosecution of such action.

The language of Chancellor PITNEY in *Bigelow v. Old Dominion C. M. & S. Co.* 74 N. J. Eq. 457, 71 Atl. 153, is pertinent and applicable to the matter under consideration. In the decision in the latter case the chancellor says:

"But, on general principles, equity will not interfere with the right of any person to bring an action for the redress of grievances—the right preservative of all rights—except for grave reasons, and on grounds of comity the power of one state to interfere with a litigant who is in due course pursuing his rights and remedies in the courts of another state ought to be sparingly exercised. . . . They must be very special circumstances that will justify this court in restraining the prosecution of an equitable action already pending in a court of such ample jurisdiction. I speak not of any limitation upon the power of this court, but upon the propriety of its exercise in the particular case. Its exercise is not to be properly based upon any theory that this court knows better how to do justice than the court of last resort of that commonwealth; that it can weigh evidence better or more justly apply to the facts any general principle of law or equity, nor upon the ground that this court recognizes different rules of law or of equity from those which obtain in the commonwealth." See, also, 14 Ruling Case Law, p. 418, § 120, on "Injunctions;" *Carson v. Dunham,* 149 Mass. 52, 20 N. E. 312, 3 L. R. A. 203.

We therefore conclude that the inability of the plaintiff herein to compel the attendance of its witnesses in the trial

court in the state of Minnesota, and the additional expense involved in producing such witnesses upon such trial, and the fact that the testimony of some of the witnesses may have to be taken by deposition, does not constitute such oppression as justified the Wisconsin court in issuing its restraining order.

Plaintiff herein also charges that the defendant's attorneys, in procuring the authority to prosecute defendant's action for personal injuries, were guilty of what is commonly known in the profession as "ambulance chasing," and that as the result of such employment so obtained defendant's action is not being prosecuted in Minnesota in good faith but from ulterior motives, primarily designed to promote the business of such counsel engaged in such reprehensible practice.

That such practices have been indulged in extensively by counsel, both in the state of Wisconsin and in the state of Minnesota, is a matter well known to the profession and to the courts. We are also aware that in both states these practices have been emphatically denounced by the state and local bar associations. It is a practice that tends to lower the ethical standard of the profession of the law and has contributed in a large measure to the disrespect which exists among the public with respect to the profession. The practice of the law is an ancient and honored profession, and we number among its followers at all times some of the ablest, most distinguished, and honored citizens of our country. This offensive solicitation of legal business has a tendency to commercialize the business of the profession, to degrade it, and to lower its standard. The practice of it is in violation of the oath that every attorney is required to take, and no reputable attorney in this state or elsewhere will resort to it. However, this is a practice which attorneys may be guilty of, and which reflects primarily upon their character as attorneys, and which may afford ample reason for disbarment, but which does not to a considerable degree in-

volve the client.   The offense of ambulance chasing is one
which is within the proper jurisdiction of bar associations
to eradicate and for the legislatures of the various states to
condemn.   In the instant case the allegations in the com-
plaint herein with respect to the offensive conduct of de-
fendant's counsel are met with a general denial, and we can-
not say from the record as it thus is brought to us that de-
fendant's counsel have as a matter of fact been guilty of
the pernicious activities with which they have been charged.
However, had it been made to appear in this case that coun-
sel had been guilty of such practices and that the defendant
herein had materially co-operated with counsel in regard to
the same, we would seriously consider this charge in con-
nection with the other reasons assigned upon which the ap-
plication for an injunction was based.   In any event, we
consider the relief granted by the trial court too broad, and
such relief should have been confined, assuming that a proper
case for injunction had been presented in the instant case,
to the injunction with respect to the further prosecution of
defendant's action in the county of Renville.

*By the Court.*—The judgment of the lower court is re-
versed, and the cause remanded with directions to dismiss
the complaint.

A motion for a rehearing was denied, with $25 costs, on
January 10, 1922.