[No. 18683.  Department Two.  January 15, 1925.]

NORTHERN PACIFIC RAILWAY COMPANY, *Respondent,* v. RICHEY & GILBERT COMPANY *et al., Appellants.*[1]

CORPORATIONS (259)—FOREIGN CORPORATIONS—ACTIONS—RIGHT TO SUE—ENJOINING ACTION IN OTHER STATE. Under Rem. Comp. Stat., § 3852, a foreign corporation that has complied with the next two sections has the same right to sue in the courts of this state as a domestic corporation.

INJUNCTION (15) — SUBJECTS OF RELIEF — ENJOINING ACTION IN OTHER STATES—GROUNDS—EVIDENCE—SUFFICIENCY. A citizen of this state is properly enjoined from prosecuting a suit against a foreign corporation in another state, where it appears that the cause of action arose here, that a great number of witnesses and records are here, and will be required in a distant state, subjecting the parties to great costs and burdens, and that the case is vexatious and not brought in the foreign state in good faith.

SAME (15)—DECREE—RIGHT TO RELIEF—CONDITIONS ON GRANTING. An injunction restraining the prosecution of an action in another state is properly made on condition of the reinstatement of a former action in this state, so as not to subject the plaintiff to the statute of limitations.

ASSIGNMENT (34)—INTEREST OF ASSIGNOR IN PROPERTY ASSIGNED. Where an assignment of a cause of action was for security only, and the assignee made no appearance in the case, the court may protect the equities of the plaintiff by allowing it to continue the action in its own name.

ESTOPPEL (32)—EQUITABLE ESTOPPEL—INCONSISTENT POSITION— VALIDITY OF ASSIGNMENT. Where, for a year and a half after a pretended assignment of a cause of action, the plaintiffs continued to control the litigation as if no assignment had been made, they are estopped to assert against the defendant that the assignee was a necessary party to the suit against whom process must issue in order to bind the plaintiff.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered October 29, 1923, upon findings in favor of the plaintiff, in an action to enjoin the prosecution of an action in another state, tried to the court.  Affirmed.

[1]Reported in 232 Pac. 355.

*Geo. F. McAulay, Grady & Velikanje,* and *Nelson R. Anderson,* for appellants.

*Geo. T. Reid, C. H. Winders,* and *L. B., da Ponte,* for respondent.

HOLCOMB, J.—While this is a somewhat extraordinary case, both in common and legal parlance, it involves a primary question not entirely novel here.

In *Rader v. Stubblefield,* 43 Wash. 334, 86 Pac. 560, 10 Ann. Cas. 20, this court held, in accordance with the almost universal rule, that a citizen of this state, domiciled here, can be enjoined from prosecuting an action in another state against a citizen of this state, upon a proper showing of the facts, and any such injunction is not an attempt to control the action of a foreign court; that the writ of injunction is issued in a proceeding *in personam* directed against a citizen of the state residing within its jurisdiction, who can be reached and controlled by its restraining power. The writ does not pretend to attempt to control the actions of any foreign court. It simply considers the equities existing between the parties before it and within its jurisdiction, makes a decree in accordance therewith, and enforces obedience to such decree. In that case it was contended by appellant that a common citizenship did not exist between all the parties, as two of them were domiciled in Oregon. We said that, while this was true, we could not say that it deprived respondents of their equitable right to the action.

In the case here, respondent, who brings the action, is a corporation organized and existing under the laws of the state of Wisconsin, with its principal place of business in the city of St. Paul, Minnesota.

Appellant, therefore, while admitting the rule that an injunction in such a case might be granted where there are clear equities existing in favor of the appli-

cant, contends that there is no right to grant it in this case, no matter how strong the equities may be in favor of respondent, because of the non-residence of respondent.

We have a statute, however, § 3852, Rem. Comp. Stat. [P. C. § 4657], which provides that,

"Any corporation incorporated under the laws of any state or territory in the United States, . . . for any of the purposes for which domestic corporations are authorized to be formed under the laws of this state, shall have full power and is hereby authorized to sue and be sued in any court having competent jurisdiction, . . . and generally do and perform every act and transact every kind of business within this state in the same manner and to the same extent as corporations incorporated and organized under the laws of this state are authorized to do under the laws of this state, by a compliance with all the conditions prescribed by the next two succeeding sections of this chapter; *Provided, however*, That this chapter shall not be [so] construed as to allow such foreign corporation to transact business within the state on more favorable conditions than are prescribed by law for a similar corporation organized under the laws of this state."

It is plain that the power to sue under this section is as broad as that enjoyed by domestic corporations, and of course the power to sue includes the right to recover any relief which may be granted to a similar domestic corporation.

It is established that respondent has complied with all the conditions of the chapter referred to in the above section of the statute.

The rule is also established that,

"When a foreign corporation has a good cause of action in a state, it is entitled, in the absence of express restriction or exclusion, not only to the right to resort to the ordinary remedies by actions at law or in equity, but also by comity, to the same right as domestic cor-

porations to resort to special statutory or other remedies, such as attachment, . . ." 14-A C. J., 1357. and on page 1218 of the same volume it is said:

"The comity involved is the comity of the state, not of the courts, and the judiciary must be guided by the principles and policy adopted by the legislature."

It is clear, therefore, that were respondent incorporated and domiciled in this state, upon a clear showing of equity it would have a right to maintain the action here brought, and to the relief to which it might be entitled. Under the statute existing, we have no doubt that respondent has the same right as a domestic corporation would have to the relief prayed. Consequently, we do not care to follow the reasoning and decisions in such cases as some that are strongly relied upon by appellant: *American Express Co. v. Fox,* 135 Tenn. 489, 187 S. W. 1117; *Folkes v. Central of Georgia R. Co.,* 202 Ala. 376, 80 South. 458.

The question then arises, has respondent shown such a case of hardship or oppression as will justify the court in granting the injunction?

In order to condense this opinion as much as possible, the facts will be but briefly summarized.

Richey & Gilbert Company is a domestic corporation, of which H. M. Gilbert is president and manager, and in entire control, with its principal place of business at Yakima, Washington. On November 2, 1918, it commenced an action in the superior court for Yakima county against respondent, claiming about $60,000 as damages for failure to supply refrigerator cars for the shipment of apples in interstate commerce during the months of November and December, 1916; a case parallel to *Pacific Fruit & Produce Co. v. Northern Pac. R. Co.,* 109 Wash. 481, 186 Pac. 852, 10 A. L. R. 337. Pleadings were filed and issues joined in the action, and it was removed to the United States district

court for the eastern district of Washington, on appli-
cation of respondent. After its removal thereto, on
January 5, 1921, Richey & Gilbert Company commenced
an action in the state district court of Minnesota, at
Minneapolis, on the same cause of action. That cause
was removed by respondent to the United States dis-
trict court for Minnesota, and on January 31, 1921,
respondent commenced an action in the United States
district court for the eastern district of Washington,
praying for an injunction against the prosecution of
the suit in the state of Minnesota. Thereupon, on
February 3, 1921, Richey & Gilbert Company dismissed
its damage suit then pending in this state, on an *ex
parte* motion. On February 12, 1921, respondent's
motion for a restraining order *pendente lite* was heard
at Yakima in the United States district court. On
August 19, 1921, the case brought by appellant in Min-
nesota was remanded to the state court, where it has
since been pending. The cause of action of appellant
was ostensibly assigned by it to one Elon B. Gilbert of
Illinois, but appellant, proceeding under a statute of
Minnesota, moved for leave to continue the prosecu-
tion of its action in the Minnesota court in the name
of the original complainant, Richey & Gilbert Company.

The complaint, amended and supplemental com-
plaint, answer of appellant, and reply of respondent
are much too voluminous to be set forth herein.

In summing up the evidence produced at the trial,
the trial court announced that it was convinced that
the equities of the case were all on the side of respond-
ent; that the suit brought in Minnesota was not brought
in good faith; that respondent would be subjected to
an enormous expense, and that the ends of justice
would not be met by transferring the place of litiga-
tion from Yakima county to the state of Minnesota;
that all of the evidence necessary to be obtained from

Minnesota or other eastern states could undoubtedly be obtained by deposition, and that the great bulk of the testimony was of the character that could be all obtained in Yakima county; that the filing of the suit in Minnesota was a needless and vexatious proceeding brought for the wrongful and unjust purpose of harrassing and vexing respondent.

Having examined the record we thoroughly agree with the trial court. The complaint and the amended and supplemental complaint set forth in great detail all the burdens and vexations to which respondent would be subjected by having the litigation in the state of Minnesota, and the decision of the trial court on demurrer, overruling the demurrer, which appellants assign as error, was undoubtedly correct.

Appellant cites a number of cases upon the question of the sufficiency of the pleadings on the part of respondent and the facts adduced at the trial as showing that there is a lack of equity on the part of respondent.

The principal case relied upon by appellant is *Bigelow v. Old Dominion Copper Mining & Smelting Co.,* a chancery case from New Jersey (74 N. J. Eq. 457, 71 Atl. 153). In that case it was held, among other things, that although the power of a court of equity in one state to restrain persons within the control of its processes from prosecuting suits in other states is clear, yet upon grounds of comity it should be sparingly exercised; that as a general rule as between courts otherwise equally entitled to entertain jurisdiction, that court which first obtains possession of the controversy should be allowed to proceed and dispose of it without any interference; that the court of chancery of New Jersey would not enjoin a suitor from the prosecution of an equitable action already pending in a court of full equity jurisdiction in a sister state upon any theory that that court could better weigh the evi-

dence or more justly apply any general principle of law or equity, nor upon the ground that the court recognizes different rules of law or equity from those which obtain in the sister state. But it was also announced in that case that where a party oppresses its adversary by suing him in a foreign jurisdiction to avoid some established local policy of the jurisdiction where the parties are domiciled, equity will, in a proper case, and upon proper terms, restrain the prosecution of such action.

In a later case from New Jersey, *Grover v. Woodward,* 91 N. J. Eq. 250, 109 Atl. 822, the Chancellor said:

"A cursory reading of the quoted portions of the opinions above cited [from the Bigelow case], might give rise to the impression—certainly counsel for defendant seems to have had such impression—that more stringent requirements are to be met by complainant in a case of this kind than in other cases where injunctive relief are sought. . . . nor do I think such interpretation warranted.

"Omitting the question of comity, the authorities cited simply declare that complainant must allege and prove circumstances clearly entitling him, as a matter of equity, to the injunctive relief—circumstances clearly showing that the prosecution of the proceedings in the other forum is or will be contrary to equity and good conscience."

Another case relied upon by appellant is that of *Jones v. Hughes,* 156 Iowa 684, 137 N. W. 1023, 42 L. R. A. (N. S.) 502, where it was held that the mere bringing of an action in another state did not of itself amount to sufficient annoyance or harrassment as will warrant injunction against its maintenance.

In the instant case, there is much stronger equity on behalf of respondent than in that. In this case it was alleged and shown very clearly that the distance between Yakima county, Washington, and Minneapolis, Minnesota, is very great; that a great number of wit-

nesses and records, mostly from Yakima county and vicinity, will be required; that the inconvenience of transporting the witnesses and records from Yakima county to Minnesota, and of taking the station agents in charge of the stations of respondent to a very large number, who are necessary witnesses for respondent, with their records, from their stations and from the performance of their duties, is very great and very burdensome. It was also shown that the expense thereof to respondent would be several thousand dollars.

Appellant cites *Chicago, Milwaukee & St. Paul R. Co. v. McGinley,* 175 Wis. 565, 185 N. W. 218, which held that there was not sufficient equity shown to enjoin the prosecution of an action in Minnesota between parties residing in Wisconsin, because by far the greater part of the witnesses resided in Wisconsin, and the place of trial would be about five hundred miles from the place of trial in Minnesota, and the testimony of such witnesses might have to be taken by deposition, and thus deprive the plaintiff of the advantage of having the personal appearance of the witnesses in court to give their testimony. The court did not consider that the maintenance and trial of the action in Minnesota would work such hardship or oppression as to warrant the intervention of the powers of a court of equity to restrain the same.

The facts in this case show that there is some appearance of vexation in attempting to litigate appellants' cause of action in Minnesota, about 1,500 miles from the place where the cause of action arose, where appellant has its domicile, and where nearly all of the witnesses reside, aside from the few expert witnesses to be called by appellant.

In *Wabash R. Co. v. Peterson,* 187 Iowa 1331, 175 N. W. 523, an injunction to restrain proceedings in an-

other state was ordered upon a much weaker showing than in the case before us. In that case the court said:

"Needlessly compelling a party to pay for bringing witnesses two hundred miles is a direct pecuniary injury. And it is an irreparable one because the outlays for the purpose are largely nontaxable, and they could not be recovered for, no matter how rich is the party that makes such outlay necessary. Injunctions such as this one have been sustained when the pecuniary loss was less direct than this. In *Freick v. Hinkly*, 122 Minn. 24, 141 N. W. 1096, a suit was enjoined merely because it would result in evading a local law of the common domicile. . . . We hold that the maintenance of the suit in Missouri will cause plaintiff such injury as to warrant the injunction. We are in accord with the statement in section 105 of 1 High, Inj., (2d ed.) that—'If, upon balancing the convenience and inconvenience likely to result to the different parties, it appears that the question involved can be more conveniently litigated in the foreign court, an injunction will be refused. And if it be made to appear that the matters in controversy can be more expeditiously adjusted and the ends of justice better attained in the jurisdiction where the parties then are, proceedings in the courts of the foreign country will be enjoined.' "

See, also, *Gage v. Riverside Trust Co.*, 86 Fed. 984; *Reed's Adm'x v. Illinois Central R. Co.*, 182 Ky. 455, 206 S. W. 794; *Freick v. Hinkly, supra.*

From the facts, and the great weight of authority upon this question, we are convinced that there was a very clear and strong showing of equity on the part of respondent, justifying the granting of the injunctional relief.

Some contention was made by appellant in the court below that if the proceedings in Minnesota were enjoined, appellant having dismissed its suit for damages in this state, it would be lost by the statute of limitations. Respondent thereupon offered to consent that the action should be reinstated in the United States

court for the eastern district of Washington, and the trial court granted the injunction upon that condition, so that respondent would be precluded from setting up the statute of limitations as a defense to that action. This balanced the equities in favor of appellant, and was a proper condition to impose upon the injunctional relief.

Appellants stoutly contend that the injunction should not be granted because Elon B. Gilbert is a non-resident of the state of Washington, and is not made a party defendant by respondent in this action, and in that regard it is also contended that the decision of the supreme court of Minnesota holds that Elon B. Gilbert is a *bona fide* assignee of appellants' cause of action pending in the state court of Minnesota. ·

We do not understand that the decision of the supreme court of Minnesota so holds. In the certified copy of the decision of the supreme court of Minnesota in the record before us, and in the report of the case in *Richey & Gilbert Co. v. Northern Pac. R. Co.,* 154 Minn. 154, 191 N. W. 395, it is said:

"Whether the order of the court substituting the new party or continuing the action in the name of the original party is final on the question of the *bona fides* and validity of the assignment on which it is made has never heretofore been presented to the court; at least we have found no such case in our reports. Under the common law procedure by bill of revivor no doubt an order of substitution made therein would be final, precluding further inquiry on the trial. . . . But the question is not here presented. Whether defendant in this case may again present the issue under a supplemental plea in abatement, alleging the invalidity of the assignment, or that it is fictitious and sham, a mere pretense to avoid the effect of the Washington injunctional order against the plaintiff, *can only properly be decided when presented in the usual way, and after it has been presented to, and decided by,*

*the trial court.* [Italics ours.] It is enough for the present that the order here in question rests in the discretion of the trial court, and, since we find no abuse in the exercise thereof, it must be sustained, . . ."

It is manifest from the above opinion that the question of good faith of the assignment of appellants' cause of action to Elon B. Gilbert may yet be tried and determined in the trial court of Minnesota, if that action proceeds.

On the question of fact as to the assignment, the trial court, passing upon the *bona fides* of the assignment, stated, and it is borne out by the records of the evidence in the case, in substance, that:

"The testimony on this subject was given by H. M. Gilbert, and he stated that the assignment was given for security of certain indebtedness. He also stated that Richey & Gilbert Company, H. M. Gilbert, and H. M. Gilbert Company were solvent, and it appears to the court that the equities being so strongly in favor of the plaintiff, coupled with the fact that the indebtedness can be collected without resort to the security given, if such security has in fact been given, that a court of equity should recognize the apparent fact that Richey & Gilbert Company is the real party in interest in the Minnesota suit, and that no hardship will be worked upon Elon B. Gilbert, the assignee, in granting the relief here sought. The pretended assignee has made no appearance in this case, neither has his testimony been produced, and the testimony of H. M. Gilbert concerning the pretended assignment, as a reading of his testimony will disclose, tends to challenge very strongly the *bona fides* of the assignment; but in any event, the assignment being merely for security, and Elon B. Gilbert's rights not being impaired in any particular, warrants the court in protecting the equities of the plaintiff. Even if the foregoing were not true, still it would appear to the court that Elon B. Gilbert and Richey & Gilbert Company and H. M. Gilbert should be estopped from asserting their pretended

assignment. This is based upon the records of this case as disclosed by the proceeding here and in the Federal Court.''

The last observation of the trial court, as to estoppel on the part of appellants and Elon B. Gilbert, is based upon the fact that for a year after the date of the pretended assignment to Elon B. Gilbert, Richey & Gilbert Company continued to control the proceedings in the courts of Washington as if no assignment had ever been made; H. M. Gilbert made affidavit in the proceeding in which he referred to the cause of action as its (Richey & Gilbert Company's) cause of action, etc.

We agree with the observations of the trial court upon these features of the case.

There is no merit in the contention that Elon B. Gilbert is a necessary party to this suit. If the assignment is not fictitious, the evidence shows that Richey & Gilbert Company and H. M. Gilbert continued to control the litigation in Minnesota and in this state.

There is no doubt that the injunction properly ran against the agents and employees of Richey & Gilbert Company, who had knowledge that an injunction had been served upon their principals, for it has always been held that agents and employees having such knowledge must obey the order while they continue in the employment. 22 Cyc. 1011.

We are of the opinion that the decree of the trial court is right, and it is affirmed.

MITCHELL, BRIDGES, and MACKINTOSH, JJ., concur.