Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellant, vs. Wolf and others, Respondents.
Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellant, vs. Hoch and others, Respondents.

*May 2—June 24, 1929.*

For the appellant there was a brief by *Hoyt, Bender, Trump, McIntyre & Hoyt* of Milwaukee, and oral argument by *Rodger M. Trump.*

For the respondents there was a brief by *Tautges, Wilder & McDonald* and *F. M. Miner* of Minneapolis, Minnesota, and *C. P. Regan* of Milwaukee, and oral argument by *Mr.· Michael Levin* of Milwaukee and *Mr. Regan.*

ROSENBERRY, C. J.   The principal questions raised in this case were before this court and considered in the case of

*Chicago, M. & St. P. R. Co. v. McGinley,* 175 Wis. 565, 185 N. W. 218, where it was held that equity may enjoin a citizen of this state from prosecuting an action for personal injuries against a railroad company under the federal act in the courts of another state, where it is necessary to prevent hardship, oppression, or fraud; that the fact that in the state in which suit is brought a party has no privilege of examining his adversary as provided by the laws of the state of Wisconsin and the other circumstances there set out do not amount to hardship, oppression, or fraud which will justify a court of equity in enjoining a citizen of this state from prosecuting his action in the state of Minnesota. No doubt the reason for the commencement and prosecution of this action is to be found in the language of the closing paragraphs of the opinion in the *McGinley Case.* The court said:

"However, had it been made to appear in this case that counsel had been guilty of such practices [ambulance chasing and soliciting of business] and that the defendant herein had materially co-operated with counsel in regard to the same, we would seriously consider this charge in connection with the other reasons assigned upon which the application for an injunction was based."

In the present case the plaintiff has labored industriously to supply the lack of facts indicated by the language of the court in the *McGinley Case.*

The situation presented by the evidence and findings of the court in this case is not a pleasant one to contemplate. The court found:

"That the firm of Tautges, Wilder & McDonald are the attorneys for each of the defendants Collins, Hoch, and Wolf, in the actions so instituted by them in the state of Minnesota. That said attorneys have offices in the Baker building in the city of Minneapolis, in said state, and that for more than a year prior to April, 1928, and thereafter at the various times mentioned in the foregoing findings and

those hereinafter contained, conducted and maintained a 'high-pressure, high-powered' department, thoroughly organized, for the purpose of soliciting legal business in the state of Wisconsin and other states, through men of experience in this line of activity employed by said firm to do the work commonly termed 'ambulance chasing,' and that in the maintenance of said department said law firm annually expends, conservatively stated, in excess of $100,000 by way of advancements to clients and salaries and other expenses of the persons employed in said department.

"That since September, 1926, Tautges, Wilder & McDonald had in their employ in the state of Wisconsin one Jacob J. Stahl, a legal resident of Milwaukee, Wisconsin, whose business was to visit injured railroad employees and induce them to employ Tautges, Wilder & McDonald as their attorneys and bring suit against the railroad company in the state of Minnesota; that said Stahl's work permits of his presence at his home in Milwaukee for only a few weeks of each year; that prior to his employment by Tautges, Wilder & McDonald in September, 1926, the said Jacob J. Stahl had been in the employ of another firm of attorneys at Minneapolis, in a similar capacity; that said Tautges, Wilder & McDonald also employ one E. L. Harrigan as superintendent of said soliciting department at a salary of $10,000 per year; that said Jacob J. Stahl and four other persons, similarly engaged, are employed by said law firm at salaries of $300 a month, and that all of said employees are also provided with allowances for all their traveling, hotel, and other expenses, amounting to considerable sums of money each month."

The court further found that as to the defendant Hoch, Tautges, Wilder & McDonald have advanced $1,000 upon a promissory note given by him to them, payable on demand, and have advanced certain necessary expenses in and about the prosecution of the action; that said Tautges, Wilder & McDonald have loaned to the defendant Wolf $1,100, have advanced certain necessary expenses in and about the prosecution of the action, upon the understanding of Hoch and Wolf that these amounts were to be deducted from any

recovery obtained, and the firm is likewise to have one third of any recovery for its services.

Robert J. McDonald, one of the firm, appeared and testified as a witness in the case, and it was established beyond any doubt by the admissions of McDonald that the findings of fact were fully sustained. Reference was made to the case of *Chunes v. D., W. & P. R. Co.* 298 Fed. 964, where United States District Judge McGee in his opinion stated that Mr. McDonald had admitted that he indulged in the practice of ambulance chasing. With respect to transgressions of the kind found by the court the witness McDonald seems to be utterly brazen. He testified:

"I told Judge McGee, while he was on the bench, that the case before him was not solicited; and even if it was solicited it was none of his business, until they changed the law in Minnesota. And it did not appear in the 298th and no court reporter was there to take what was said down, and I am sorry there was not some one there. I have not changed our method of practice since that took place in the federal court. I will tell you this: when I was admitted and first started in this business, I thought it would be all right to solicit cases. I told you that the other day. And because of the decision of the Minnesota supreme court saying that a lawyer has a perfect right to solicit cases, when I started in I told everybody I was practicing law; I didn't just put a sign up and stay there and wait for somebody to come in; I will admit that."

Upon cross-examination by the court the witness, however, admitted that what the supreme court of Minnesota held was that there was no statute prohibiting it and that the court condemned as reprehensible conduct of that kind, and then wound up his testimony on this point by saying:

"I think they say that and also this: that the ethics of a lawyer should be determined by him, himself; and I always believed that should be, that my ethics should be determined by me."

It is quite apparent from the testimony of the witness that

he traveled about the country soliciting business, working in conjunction with solicitors of the firm, saw that sums were advanced to clients and that the firm paid the expenses of litigation secured by him. Some inkling of the methods pursued by this firm may be gained from the testimony of the witness to the effect that none of the expenses of the investigators are charged to clients but are paid by the firm; that the firm maintains a slush fund and entertainment fund; that the investigators were paid about $300 a month; some of them work on a commission basis, which amounts to forty per cent. of the net fees obtained by the firm. The firm also maintains a corps of expert witnesses. The firm annually loans to clients $50,000, annually pays to Harrigan, chief of the soliciting force, $10,000; pays to investigators annually a total of $18,000, and has other annual expenses of $40,000. As indicating the position these solicitors occupy in the firm's activities and the respect in which they are held by the witness McDonald, he testified:

"I wish you could see Harrigan [chief of solicitors]. You could take your hat off to him and say 'Here is a real gentleman.' I cannot say I will produce any one in court, Mr. Killilea. I haven't any control over him. He is a bigger man than you are, Mr. Killilea. He is our employee, but I do not dictate to him. He is a great big Irishman, and he is a very satisfactory man, and I have no occasion to dictate to him."

That the practices of this firm violate the canons of professional ethics there cannot be the least doubt. One reads Mr. McDonald's testimony in vain for any indication of what he would consider unethical conduct.

By statute, sec. 256.29, the facts found by the court in this state constitute unprofessional conduct and are grounds for disbarment and the contracts entered into are absolutely void. Common barratry is defined by sec. 348.325 as "the practice of soliciting, maintaining or exciting judicial proceedings or other actions at law or equity," and is punished

by imprisonment in the county jail not more than six months or by fine not exceeding $500.

The conduct of the attorneys in this case is not only unethical and shocking to the professional conscience of any right-thinking lawyer, but violative of ordinary professional decency. The conduct of the lawyer who was described as "flying the black flag of piracy" (165 Wis. 381, 161 N. W. 364) was almost innocent compared with what was done by this firm of attorneys in securing business. The only refreshing note in the whole sordid mess is the breezy buccaneer-like confidence of Mr. McDonald, apparently born of association with an organization so invincible that he feels safe not only in violating the laws of a sister state and the canons of professional ethics, but in flaunting the violation in the face of his accusers as if to say, "Here it is, what are you going to do about it?"

The offenses of which the attorneys Tautges, Wilder, and McDonald are guilty relate to their offices as members of the bar of the state of Minnesota and are offenses against the laws and dignity of the state of Minnesota. Over those offenses the courts of Wisconsin have no jurisdiction nor have they any control over the status of the members of this firm as lawyers. These offenses are (1st) the improper and unethical solicitation of business by them as lawyers, contrary to the canons of ethics and in violation of the statute law of the state of Wisconsin; (2d) they are guilty of the offense of barratry as defined by the laws of this state; (3d) advancing funds to clients in consideration of retainer does not differ materially from a purchase of an interest in the claim and the maintenance of a suit thereon for the joint benefit of the purchaser and client. That conduct of this sort constitutes grounds for disbarment there can be no question. *Weinard v. C., M. & St. P. R. Co.* (Dist. Ct. Minn.) 298 Fed. 977; *In re Gorsuch,* 113 Kan. 380, 382, 214 Pac. 794; *Beck v. Boucher,* 114 Wash. 574, 195 Pac. 996; *In re*

*Winthrop,* 135 Wash. 135, 237 Pac. 3; *Chreste v. Comm.* 178 Ky. 311, 198 S. W. 929; *People v. Berezniak,* 292 Ill. 305, 127 N. E. 36. See, generally, 6 Corp. Jur. p. 598, § 58, and cases cited.

If the situation disclosed by the evidence in this case were presented to the proper court of the state of Minnesota, in addition to constituting grounds for disbarment, the court might decline to entertain jurisdiction of the suits procured by such unethical and unlawful means. That courts are not required to exercise their jurisdiction in cases of this kind seems plain. It is a matter of discretion with the courts. *Burdick v. Freeman,* 120 N. Y. 420, 24 N. E. 949; *State ex rel. Young v. Kent,* 96 Minn. 255, 104 N. W. 948; *State ex rel. Goldwyn D. Corp. v. Gehrz,* 181 Wis. 238, 194 N. W. 418; *State ex rel. Ætna Ins. Co. v. Fowler,* 196 Wis. 451, 220 N. W. 534. The rule is especially applicable where questions of public policy are involved, and courts will not hesitate, where there is a proper competent tribunal which has jurisdiction to afford suitors relief, to refuse to entertain suits between citizens of other states freighted with fraud and illegality. *Bagdon v. Phila. & R. C. & I. Co.* 178 App. Div. 662, 165 N. Y. Supp. 910; *DeWitt v. Buchanan,* 54 Barb. 31. A contrary rule prevails in the state of Missouri. *State v. Grimm,* 239 Mo. 135, 143 S. W. 483. Upon the general question see cases cited in 15 Corp. Jur. p. 816, § 118. Courts in such cases do not refuse to entertain jurisdiction because of any lack of power, but because they will not thereby make themselves a party to that extent to any scheme of oppression, fraud, or violation of law or of public policy.

In *Winders v. Ill. Cent. R. Co.* (Minn.) 223 N. W. 291, the supreme court of the state of Minnesota sustained an order of the trial court refusing to dismiss an action on the ground that it was prosecuted under a champertous agreement but did not deal with the question of public policy

involved in the case. In the dissenting opinion of Mr. Justice STONE the whole matter is dealt with in a way which leads us to infer that the question of public policy was to some extent at least before the court although no reference is made to it in the opinion of the court.

In *Douglas v. N. Y., N. H. & H. R. Co.* 279 U. S. 377, 49 Sup. Ct. 355, decided May 13, 1929, the supreme court of the United States sustained a statute of the state of New York authorizing New York courts in their discretion to refuse to entertain actions between nonresidents, and it was there distinctly held that the Federal Employers' Liability Act did not require a state court to take jurisdiction of a suit arising under it.

However much we may regret that the legal profession is disgraced by men who have no regard for its traditions or its ethics, we must confine ourselves to a consideration of the rights of the parties to this action. The trial court found that the defendants Hoch and Wolf did not participate in the wrongful practices indulged in by their attorneys. We have examined the record and this finding is fully sustained by the evidence unless the mere fact that the defendants yielded to the solicitations of their attorneys amounts to an offense under the law. As champerty, maintenance, barratry, and unlawful solicitation of claims are defined in the law, both common and statutory, we find nothing to warrant a holding that the person solicited is a participant in the offense merely because he yields to the solicitations.

The defendants Hoch and Wolf having themselves been guilty of no wrong, the case presented is the same as if they had voluntarily gone to the state of Minnesota and there commenced their action. If under such circumstances the courts of Minnesota consent to entertain the actions and exercise their jurisdiction, the defendants Hoch and Wolf are plainly within their rights. If, on the other hand, the courts of Minnesota should remand them to the state of Wis-

consin, where the causes of action arose, where the witnesses reside, and where the actions are properly triable, they cannot complain. Their right to resort to the courts of Minnesota is an appeal to favor. There was no attempt made by the plaintiff in this action to present the situation disclosed by the evidence in this case to the courts of Minnesota. If the facts disclosed by the evidence in these cases were presented to a Minnesota court, it must be assumed that the courts of that state would deal with the situation in accordance with the established principles of law. That an organization such as Tautges, Wilder & McDonald, maintaining a corps of expert witnesses, employing high-powered solicitors, using slush and entertainment funds to secure business and no doubt for other purposes, is a menace to the proper administration of justice cannot be doubted. Having secured business at a large expense, advanced funds to clients, the interest of the members is not as officers of the court in seeing that justice is fairly administered, but that a verdict is secured in each case which will protect their investment and secure to them the fruits of their illicit enterprises. That these attorneys, being as they are officers of a court charged with important duties in the administration of justice, can openly prostitute their high calling and go unpunished— not only unpunished but unrestrained—seems incredible, and, if such is the case, the facts constitute a strong indictment of the courts. The power of courts to maintain the integrity of the law and keep the channels of justice open and pure is very great. For that purpose they have broad inherent powers not dependent upon acts of the legislature and a responsibility to society which is as great as their powers.

This whole matter was fully discussed in the cases cited in the dissenting opinion of Mr. Justice STONE in *Winders v. Ill. Cent. R. Co., supra.* To these cases may be added *People ex rel. Karlin v. Culkin,* 248 N. Y. 465, 162 N. E. 487, where CARDOZO, C. J., considers the power and duty of

the court in the premises exhaustively and cites and reviews the authorities at length.

A temptation to exercise all the powers possessed by this court to cure or alleviate a situation such as is disclosed by the evidence in these cases is very great. Courts, however, should not set an example of law-breaking or abuse their authority even where the end to be achieved may suggest it or even warrant it in a particular case. The matter of solicitation and adjustment of personal injury claims in the state of Wisconsin is now under consideration by the legislature, and if the legislation proposed is adopted it will go far toward putting an end to the practices indulged in by Tautges, Wilder & McDonald in this case.

The defendants in these cases have been guilty of no wrong. The cases in other respects fall within the decision of the *McGinley Case, supra,* and the judgment of the circuit court in each case must be affirmed.

*By the Court.*—It is so ordered.