[No. 28593. Department One. July 23, 1942.]

JERRY CHATOS, *as* *Administrator,* *Respondent* *and* *Cross-appellant,* v. JOHN LEVAS, *Defendant,* MARY LEVAS, *Appellant.*[1]

*Chavelle & Chavelle,* for appellant.

*Christ D. Lillions* and *J. Will Jones,* for respondent.

SIMPSON, J.—This suit was instituted by plaintiff November 27, 1940, as administrator *de bonis non* of the estate of James Livanas, or Levas, deceased, for the purpose of foreclosing a real estate mortgage executed by John Levas and Mary Levas, his wife.

[1]Reported in 128 P. (2d) 284.

The complaint alleged that August 11, 1932, the defendants, husband and wife, for money borrowed, made, executed, and delivered to James Levas their promissory note in writing, by the terms of which they agreed to pay to James Levas the sum of six thousand dollars six years after date with interest at six per cent per annum; that on the same day the makers of the note executed a real estate mortgage to secure the payment of the promissory note. By a bill of particulars, plaintiff stated that the note alleged to have been signed by Levas and wife was not in the plaintiff's possession. Defendant John Levas failed to answer, and an order of default was entered against him.

Defendant Mary Foufounis by answer denied all of the allegations of the complaint and alleged that the cause of action, if any, did not accrue within six years before the commencement of the action and was barred by the statute of limitations. The case was tried upon its merits and a judgment of foreclosure entered. Defendant Mary Foufounis appealed and the administrator cross-appealed.

Appellant's assignments of error are in entering a decree of foreclosure, in ruling that there was sufficient evidence to sustain the decree of foreclosure, and in ruling that the statute of limitations did not apply; further that the evidence did not support the court's findings of fact and conclusions of law. The assignments of error made by cross-appellant relate to an offset allowed against the amount named in the mortgage, and in granting judgment in favor of appellant against John Levas for the amount of the note and mortgage.

The record discloses the following facts: The respondent is related by marriage to defendant John Levas. Appellant was formerly the wife of John Levas. They were married July 1, 1915, and divorced December 10, 1938. During their married life they

accumulated several pieces of real property. August 11, 1932, they signed and acknowledged a mortgage upon a portion of their real estate. The mortgage was given to James Levas to secure the payment of six thousand dollars. The portion of the mortgage which related to the amount and its payment read as follows:

"THIS CONVEYANCE is intended as a MORTGAGE to secure the payment of Six Thousand and 00/100 Dollars, gold coin of the United States, together with interest thereon in like gold coin at the rate of six per cent. per annum from date until paid, according to the terms and conditions of that certain promissory note bearing date of August 11, 1932 made by JOHN LEVAS and MARY LEVAS, his wife payable to the order of JAMES LEVAS . . ."

The note was not presented during the trial.

Appellant argues that the case should have been dismissed for the reason that the note was barred by the statute of limitations, inasmuch as no payments had been made upon the indebtedness and the time of payment was not fixed other than as the date of its making.

The evidence concerning the time of payment was given by John Levas, and was to the effect that the note provided that it should be paid in six years after August 11, 1932. Respondent testified that appellant told him at one time that the note was to be paid within six years. Appellant testified that no note was given as stated in the mortgage and that she did not make the statement attributed to her by respondent. Other testimony introduced at the trial indicated that the note and mortgage were signed and that the mortgage was duly acknowledged and recorded.

Immediately after the death of James Levas, which occurred February 2, 1934, defendant John Levas petitioned for letters of administration upon the estate of James Levas, deceased, and verified that petition be-

fore a notary public on or about the 5th day of February, 1934. Levas also signed an inventory and appraisement in the estate. It is disclosed by these records that at no time during the probate proceedings of the estate of James Levas was there any disclosure made on the part of the administrator of that estate of any mortgage or any encumbrance upon the particular property in question.

Another record of the superior court in the state of Washington for King county discloses that an action for divorce was instituted by appellant against defendant John Levas, and in that action Levas caused to be filed on his behalf an answer and cross-complaint together with a financial statement purporting to set forth all of his property and all of the encumbrances connected therewith. Neither in the answer, nor in the bill of particulars, nor in the evidence submitted in the divorce action, was any mention made of any purported mortgage.

There is evidence of disinterested witnesses that John Levas had stated that the property in question was free and clear of encumbrances. Other evidence established the fact that, immediately subsequent to the institution of the divorce action, John Levas maintained an attitude of animosity toward the former wife, and that, just prior to the trial in this case, he had threatened her and stated that he was going to cause her to lose her property and to defend several lawsuits after the termination of the one being tried.

After the trial in this case, the court made a memorandum decision in which he stated in reference to the testimony of John Levas:

"No witness could be more thoroughly discredited as a witness in a record than has been the case of John Levas in the present one."

After reading the testimony, we are satisfied that

the court reached the proper conclusion relative to the credibility of the testimony given by John Levas.

This leaves the record in the following condition: The making of the note and mortgage was established by the evidence, but no credible evidence was introduced concerning the due date of the note for which the mortgage was given to secure. Such being the case, we must hold that there was no date of payment mentioned in the note and that it, therefore, became a note payable on demand.

Rem. Rev. Stat., § 3398 [P. C. § 4078], provides:

"An instrument is payable on demand . . . in which no time for payment is expressed."

The rule is that the statute of limitations begins to operate, upon a note payable on demand, from the date of its execution.

"In the absence of anything in the instrument itself or in the circumstances under which it was given indicating a contrary intention, the statute of limitations begins to run against an ordinary promissory note payable on demand from the date of its execution, and not from the time of the demand." 34 Am. Jur. 118, Limitation of Actions, § 147.

A statement to the same effect is contained in 37 C. J. 818, Limitations of Actions, § 168.

There being nothing in the mortgage which indicated the date of the payment of the note, and credible evidence being lacking concerning the due date, we are compelled to hold that the action was not instituted within the six-year period provided by the statute of limitations, Rem. Rev. Stat., § 157 [P. C. § 8162].

The judgment will be reversed, with instructions to dismiss the action.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.