[No. 30028.  *En Banc.*  June 19, 1947.]

W. A. RUSHLIGHT, *Respondent, v. H. A. McLAIN, Appellant.*[1]

[1] Reported in 182 P. (2d) 62.

*Jones & Bronson* and *Story Birdseye,* for appellant.

*Lycette, Diamond & Sylvester,* for respondent.

ABEL, J.—Plaintiff brought suit on three negotiable promissory notes, payable on demand, executed by defendant in Seattle, where defendant was then a resident. The first two notes were executed in 1937, and the last note on February 7, 1938. The first and second notes were payable to plaintiff, and the last note was payable to A. G. Rushlight & Company, a corporation, of which plaintiff was president. Plaintiff had endorsed the first two notes over to this company; however, all of the notes were endorsed to plaintiff for collection just prior to the time this suit was brought.

The notes grew out of the business association of plaintiff and defendant, which lasted during a period of eight or nine years prior to the bringing of this suit. During this

period, defendant worked for plaintiff in various capacities, and they were associated in several unprofitable business ventures.

Defendant was a resident of the state of Washington until some time in 1943, and was then absent and resided in the state of Oregon for a period of two years, during which time he was employed by plaintiff or plaintiff's company.

Just prior to the bringing of this action, defendant brought suit in the state of Oregon for a balance of wages claimed to be due him, in which case A. G. Rushlight & Company, plaintiff's assignor, was the defendant. In that suit, A. G. Rushlight & Company set up as a first affirmative defense the execution of the three notes involved in this case, and alleged plaintiff's promise that he would pay the notes out of his earnings from the corporation when he went to work for it, the corporation's reliance on such promise, his failure to pay them, and his assertion that the notes were outlawed by the Oregon statute of limitations; and that, in good conscience and equity, plaintiff is estopped from maintaining that action against the corporation.

No affirmative relief was asked in the Oregon case on the notes; however, in the instant case, defendant claims that these notes are pleaded as an "offset" in the Oregon case, and plaintiff takes the position that they are pleaded as constituting an estoppel in the Oregon action.

Defendant introduced evidence to show that the three notes were paid and were to be canceled, and that plaintiff was to pay defendant fifteen hundred dollars, in addition, as the purchase price of 25,050 shares of the stock of the Manganese Mining & Manufacturing Company. This transaction took place some time in December, 1941, and plaintiff did pay to defendant fourteen hundred dollars, in several payments, during that period. Certificate No. 81, of the Manganese Mining & Manufacturing Company, for 25,050 shares, was issued on December 17, 1941, to H. A. McLain and was endorsed on the back, on the same date, by H. A. McLain, in which endorsement he says, "For value received, I hereby sell, assign and transfer unto W. A. Rushlight, 25,050 shares . . ." A similar certificate for

425 shares was issued to H. A. McLain on the same date and bears the same endorsement.

The third note was lost. However, no contention was raised concerning the execution of this note, and plaintiff introduced in evidence a written assignment of the note from A. G. Rushlight & Company.

The trial court held that the first note was outlawed, but that the second and third notes were not outlawed, that they had not been paid, and entered judgment for plaintiff.

Defendant has appealed and makes twelve assignments of error; however, these are argued under four separate heads. The first is appellant's contention that the notes have been paid in full; second, that respondent is not the owner of the notes by reason of the fact that his assignor pleaded the identical notes in the Oregon suit, which case is now pending and in which case appellant is the plaintiff; that, because of pleading these notes in the Oregon suit, title to the notes has at all times remained in respondent's assignor; third, that the notes are barred by the statute of limitations; and fourth, that the statute of limitations had run against these notes in the state of Oregon and respondent could not have successfully sued on them in that jurisdiction because of this, and, in view of Rem. Rev. Stat., § 178 [P.P.C. § 73-49], no suit is maintainable on them in the state of Washington.

■ This court has often said that the findings of the trial court on conflicting evidence will not be disturbed unless the evidence clearly preponderates against the findings. However, as held in *Romano Engineering Corp. v. State,* 8 Wn. (2d) 670, 113 P. (2d) 549, this court has never refused to reverse a trial court when convinced that the evidence was preponderately against its findings.

■ In a suit upon a promissory note, the burden of proof is upon the maker to show payment, when its execution and delivery have been admitted. *Federal Rubber Co. v. M. M. Stewart Co.,* 180 Wash. 625, 41 P. (2d) 158.

■ Appellant argues that the facts showing payment preponderate against the trial court's findings, and he lays

considerable stress upon the testimony of respondent, wherein he said "No" in answer to the question, "Was that assignment of the stock given at your request to secure these obligations?" We have examined the testimony, and it is apparent that respondent and his counsel did not consider this testimony to be in reference to the fourteen hundred dollars. From a reading of respondent's testimony, it is not at all clear to us what he was referring to. Respondent had taken a contrary position all through the trial, and appellant's counsel should have cross-examined respondent and made his testimony clear, if appellant were going to take the position that respondent had completely changed his testimony in this one statement. We have examined the testimony carefully and find that the evidence does not preponderate against the trial court's findings.

The second question is whether respondent is the owner of the notes, by reason of the fact that his assignor pleaded the identical notes in the Oregon suit, which case is now pending and in which case appellant is the plaintiff. In passing upon this question, we call attention to the words used in respondent's answer in the Oregon case. After setting forth the notes, he alleges that:

"Plaintiff should not in good conscience and equity be permitted to maintain this action, and Plaintiff should be and is estopped to maintain the same."

No affirmative relief is pleaded in the Oregon case by reason of these notes. However, in the event appellant should be estopped from maintaining the action in Oregon by reason of these notes, then that in itself would amount to affirmative relief, for the prayer asks that the case be dismissed. We have, then, a situation where a party sets out certain notes as a defense to an action in the state of Oregon, and, at the same time, he or his assignee, who stands in his shoes, maintains an action upon the identical notes in the state of Washington.

In support of his contention, appellant cites 31 C. J. S. 372, to the effect that it is well settled that a party who has knowingly and deliberately taken a particular position in

judicial proceedings is estopped to assume a position inconsistent therewith. Appellant also cites the case of *Hardgrove v. Bowman,* 10 Wn. (2d) 136, 116 P. (2d) 336. The full quotation from 31 C. J. S. 372, § 117, is as follows:

"Subject to certain qualifications and limitations, it is a well established principle that a party who has knowingly and deliberately assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the prejudice of the adverse party. It is frequently required, in order for such estoppel to operate, that the position first assumed should have been successfully maintained."

The same source says, on p. 374:

"Estoppel against inconsistency in judicial proceedings is generally treated as a phase of equitable estoppel or estoppel in pais, and under this view its operation has been made to depend on the presence or absence of elements essential to equitable estoppel. Thus, as a general rule it is essential, or at least an important factor, that the position first assumed should have resulted in advantage to one party or disadvantage to the other. The party invoking the estoppel . must have been misled by the assumption of the first position, must have relied on it, and, so relying, have acted, or refrained from acting, or have changed his position, to his prejudice, or have put himself in such a position that his rights would be injuriously affected if his opponent were permitted to change his position."

In the case of *Hardgrove v. Bowman, supra,* the owner of land, in an action of forcible entry and detainer, succeeded in having a lease declared invalid and his tenant ousted. We held that he was estopped, in a subsequent action by the tenant to recover for improvements placed upon the land, from claiming any damages because of the alleged breaches of the lease by the tenant. We held in that case that the position of the landowner was utterly inconsistent with the position he had taken in a former case and stated:

"A litigant will not be heard to say in one breath that a contract is of no force or effect, and in the next assert a right to recover upon it. He may not defeat his adversary's cause on 'the theory that the contract is invalid and, in the

same or a subsequent action, claim any rights under it. The agreement cannot be treated as a nullity for one purpose and as a binding contract for another. [Citing cases.]"

In the case of *Smith v. Saulsberry,* 157 Wash. 270, 288 Pac. 927, we stated as follows:

"Statements in a pleading in a former action which are merely assertions of a conclusion of law do not constitute an estoppel. 21 C. J. 1233, § 239; *Mulvaney v. Gibbons,* 87 Ill. 367. The appellant may not successfully invoke the doctrine of estoppel by pleading or estoppel by record for another reason. The position respondents assumed in the action to quiet title was not successfully maintained, the court deciding upon demurrer that the respondents were not entitled to file a lien against the real estate bid in at the sheriff's sale by Saulsberry. 21 C. J. 1230, § 233. . . .

"We shall not review the numerous authorities cited by appellant. They are all distinguishable on the facts from the case at bar. Further, in the cases cited, the party precluded successfully maintained the position he assumed in the prior proceeding."

In the case of *Gordon v. Decker,* 19 Wash. 188, 52 Pac. 856, the maker gave a note for the purchase price of certain real estate. Subsequently, the payee could not convey title to a portion thereof and agreed with the maker that seven hundred dollars of the amount of the note could be postponed until such time when he could convey good title to that portion. The payee subsequently assigned the note to plaintiff, who took it with knowledge of the agreement as to postponement. In the meantime, the maker had sued the original payee and recovered judgment against him for seven hundred dollars damages for breach of warranty of title. In this action on the note, wherein the assignee was plaintiff and the original maker was defendant, this court held that the defendant was not estopped from pleading her equities against the plaintiff, despite the fact that she had seen fit to reduce her demand against the payee to judgment, and allowed her to set off the full seven hundred dollars plus interest and costs.

*Chicago, R. I. & P. R. Co. v. Schendel,* 270 U. S. 611, 70 L. Ed. 757, 46 S. Ct. 420, 53 A. L. R. 1265, was a case where

an action for damages was brought in the state of Minnesota and the defendant railroad had invoked the Iowa industrial insurance act and obtained a determination of the issue.  The supreme court of the United States stated:

"Where both are *in personam*, the second action or proceeding 'does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending.  Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court.  Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res judicata* by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case.  The rule, therefore, has become generally established that where the action first brought is *in personam* and seeks only a personal judgment, another action for the same cause in another jurisdiction is not precluded.' *Kline v. Burke Constr. Co.*, 260 U. S. 226, 230."

The rule is stated in 3 Beale, Conflict of Laws, 1662, § 619.1:

"The fact that another *in personam* action is pending in a foreign country between the same parties on the same cause is no bar to an action at the forum.  The same rule applies when the action is brought in a state court and the action is pending in a federal court; and this even though the federal court is sitting in the same state.  An action *in personam* pending in one state is not sufficient ground to sustain a plea in abatement to an action on the same cause between the same parties in second state.  The court may, if it chooses, grant a stay.  The same rule also applies when the first action is in a state court and the second in a federal court."

■  In the Oregon suit, respondent took the position that the notes were outlawed in the state of Oregon but claimed that, in good conscience and equity, appellant should be estopped from maintaining his action.  There is nothing inconsistent in that position as compared with respondent's attempt to maintain this action.  It is, of course, true that respondent could not successfully maintain a suit in the

state of Washington when he has successfully maintained a suit on the same obligation in the state of Oregon. However, it is not pleaded nor claimed that respondent successfully maintained his position in the state of Oregon. There was no request for a delay in hearing this case until the Oregon case was tried. Appellant was not misled. He has not relied on anything in either of these cases to his prejudice or detriment. Respondent's position in the Oregon case is not inconsistent with his maintaining the present suit. If he succeeds in one, he, necessarily, is estopped to proceed further in the other; but, until it is shown that he has successfully maintained his position in Oregon, he should not be estopped in the state of Washington.

On the question of the statute of limitations, Rem. Rev. Stat., § 168 [P.P.C. § 73-29], provides as follows:

"If the cause of action shall accrue against any person who is a nonresident of this state, or who is a resident of this state and shall be out of the state, or concealed therein, such action may be commenced within the terms herein respectively limited after the coming, or return of such person into the state, or after the end of such concealment; and if after such cause of action shall have accrued, such person shall depart from and reside out of this state, or conceal himself, the time of his absence or concealment shall not be deemed or taken as any part of the time limit for the commencement of such action."

Appellant claims that the reason for the exception mentioned in the above section is that the debtor should not be allowed the protection of the statute of limitations when he has been out of the jurisdiction and not available for suit, and he calls our attention to the fact that this law is not applicable when a debtor leaves the state temporarily because of the fact that the creditor may protect himself by making service upon him at his home. *Crowder v. Morphy,* 61 Wash. 626, 112 Pac. 742. Appellant cites the following cases from foreign jurisdictions to sustain his position: *Froelich v. Swafford,* 35 S. D. 35, 150 N. W. 476, 893, and *Surget v. Stanton,* 10 La. Ann. 319.

The case of *Froelich v. Swafford, supra,* does not support appellant's position, for, in that case, the question was

whether the statute of limitations was suspended by reason of the fact that the cause of action concerned real estate located in the same state, and the court stated that the statute of limitations

". . . has no application where, regardless of the absence from the state of the party against whom one has a right of action to enforce some legal right, such legal right can be fully enforced through a decree acting directly upon property within this state, and which decree can rest upon constructive service of process."

The case of *Surget v. Stanton, supra,* has no application to the case at bar for the reason that the original action accrued in the state of Mississippi, where both parties were then resident, and the decision was based upon an interpretation of the Louisiana statute.

There can be no question but that the cause of action in the case at bar arose or accrued against appellant while he was a resident of the state of Washington. The case of *Chatos v. Levas,* 14 Wn. (2d) 317, 128 P. (2d) 284, held that the statute of limitations begins to run against a demand note from the date of its execution. This is undoubtedly the law of the state of Washington, and, since the statute began to run from the date of the execution of the notes, the cause of action thereon accrued in the state of Washington while appellant was a resident of this state.

Appellant says that, since he was working for the respondent or his corporation during his absence from the state, respondent should be estopped from invoking the provisions of Rem. Rev. Stat., § 168. It is true that the case of *Crowder v. Morphy, supra,* established the rule in this state that the statute of limitations shall not be tolled during the absence of a debtor, when he was temporarily absent and service of process could be made upon him at his home in the state of Washington. The reason for the rule was as follows:

"The whereabouts of the husband is wholly immaterial, so long as a home is maintained at which service may be made, when it appears that his absence was of a temporary or casual nature; the better rule being that the statute will

operate without the saving clause if process might be served."

In the case of *Cannavina v. Poston*, 13 Wn. (2d) 182, 124 P. (2d) 787, we restated the rule in this state regarding the interpretation of statutes of limitations as follows:

"While we have long recognized the rule in this state that a plea of the statute of limitations is not an unconscionable defense, we have also recognized and so stated that it is 'not such a meritorious defense that either the law or the facts should be strained in aid of it.' *Bain v. Wallace*, 167 Wash. 583, 10 P. (2d) 226, and cases therein cited."

The interpretation to be given statutes of limitations is discussed in 34 Am. Jur. 153, § 189, where it is stated:

"Such exceptions in statutes of limitation are strictly construed, and cannot be enlarged from considerations of apparent hardship or inconvenience. The enumeration of specific exceptions by the legislature excludes all others by implication." (Numerous cases are cited.)

In the same volume, at p. 173, § 216, there is a discussion of the effect of exceptions to statutes of limitations where the party is absent from the state and the rule is stated:

"Nevertheless, exceptions of this character apply in all cases coming within their terms." (A number of cases are cited.)

In the same text, the rule is stated as follows, p. 150, § 186:

"While formerly an inhospitable reception was accorded by the courts to the legislative policies embodied in statutes of limitation, and in earlier cases the courts implied exceptions to such statutes at every opportunity, in later years, the courts, although not inclined to deny or question the authority of the precedents importing into the statute certain exceptions, have been unwilling to add exceptions which the legislature has not seen fit to make. The modern rule of construction is that unless some ground can be found in the statute for restraining or enlarging the meaning of its general words, it must receive a general construction, and the courts cannot arbitrarily subtract therefrom or add thereto. While most courts give recognition to certain implied exceptions arising from necessity, it is now conceded that they will not, as a general rule, read

into statutes of limitation an exception which has not been embodied therein, however reasonable such exception may seem, even though the exception would be an equitable one."

There is an annotation on the same subject in 83 A. L. R. 273, where it is stated:

"According to the weight of authority, in the absence of a statute to the contrary, a provision in a statute of limitations that the period of limitation upon a cause of action shall not be considered as running while the person against whom the cause exists is a nonresident, or without the state, must be given effect notwithstanding the nonresidence of the person in whose favor the cause exists."

In the case of *Blackburn v. Blackburn's Estate,* 124 Mich. 190, 82 N. W. 835, 83 Am. St. 325, the plaintiff widow brought an action against her deceased husband's estate upon a promissory note given her for a conveyance by her to him of certain real estate, the note being given while they were living together as husband and wife. After the execution of the note, the husband and wife moved to North Carolina and lived there about four years, later returning to Michigan to live. The note would be outlawed, unless the operation of the statute of limitations was suspended during their absence from Michigan. The Michigan statute provided:

" 'If, after any cause of action shall have accrued, the person against whom it shall have accrued shall be absent from and reside out of the State, the time of his absence shall not be taken as any part of the time limited for the commencement of the action.' "

In discussing the question involved, the court stated:

"It is conceded by counsel for contestant that if George N. Blackburn alone had been absent from and resided out of the State, and in the State of North Carolina, the time of such absence could not be taken as a part of the time limited for commencement of action; but it is claimed that where both parties (the maker and the payee of the note) go out of the State, and take up a residence in the same State, the statute above has no application. The argument in support of this contention is that, if a creditor has the means at all times of making his cause of action perfect, it would be unjust and oppressive to hold that he could

postpone indefinitely the time for enforcing his claim, by failing to present it. . . .

"It is, we think, well settled that, though the claimant resided with the deceased in the State of North Carolina for the time stated, yet that fact would not take the case out of the exception created by this section of the statute."

The statute in this state (Rem. Rev. Stat., § 168) is clear and specific. There are a number of exceptions where the statute does not apply, and for us to follow appellant's argument would be to read into the statute something that the legislature did not put there. Courts will not read into statutes of limitations exceptions not embodied therein.

Appellant's fourth claim of error is based upon Rem. Rev. Stat., § 178, which provides as follows:

"When the cause of action has arisen in another state, territory, or country between nonresidents of this state, and by the laws of the state, territory or country where the action arose, an action cannot be maintained thereon by reason of the lapse of time, no action shall be maintained thereon in this state."

In view of the fact that this cause of action arose in the state of Washington, where appellant was a resident, this section of the code is not applicable.

The judgment is affirmed.

ALL CONCUR.