**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 18, 2024

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 18, 2024

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| PACIFIC LUTHERAN UNIVERSITY, a Washington nonprofit corporation; THE UNIVERSITY OF PUGET SOUND, a Washington nonprofit corporation; WHITWORTH UNIVERSITY, a Washington nonprofit corporation; ALBION COLLEGE, a Michigan nonprofit corporation; ALBRIGHT COLLEGE, a Pennsylvania nonprofit corporation; ALMA COLLEGE, a Michigan nonprofit corporation; ARCADIA UNIVERSITY, a Pennsylvania nonprofit corporation; AUGSBURG UNIVERSITY, a Minnesota nonprofit corporation; AUGUSTANA COLLEGE, an Illinois nonprofit corporation; CALIFORNIA LUTHERAN UNIVERSITY, a California nonprofit corporation; CAPITAL UNIVERSITY, an Ohio nonprofit corporation; CARTHAGE COLLEGE, an Illinois not-for-profit corporation; CLAFLIN UNIVERSITY, a South Carolina nonprofit corporation; CONCORDIA COLLEGE CORPORATION, a Minnesota nonprofit corporation; CORNELL COLLEGE, an Iowa nonprofit corporation; DAVIS & ELKINS COLLEGE, INC., a West Virginia C corporation; DENISON UNIVERSITY, an Ohio nonprofit corporation; DEPAUW UNIVERSITY, an Indiana nonprofit corporation; DOMINICAN UNIVERSITY OF | No. 100752-3<br><br>En Banc<br><br>Filed: <u>January 18, 2024</u> |

CALIFORNIA, a California nonprofit )
corporation; DREW UNIVERSITY, a New )
Jersey nonprofit corporation; UNIVERSITY )
OF EVANSVILLE, an Indiana nonprofit )
corporation; FLORIDA MEMORIAL )
UNIVERSITY, a Florida nonprofit corporation; )
FURMAN UNIVERSITY, a South Carolina )
nonprofit corporation; GAMMON )
THEOLOGICAL SEMINARY, a Georgia )
nonprofit corporation; GREENSBORO )
COLLEGE, a North Carolina nonprofit )
corporation; GUSTAVUS ADOLPHUS )
COLLEGE, a Minnesota nonprofit corporation; )
TRUSTEES OF THE HAMLINE )
UNIVERSITY OF MINNESOTA, a Minnesota )
general entity; ILLINOIS WESLEYAN )
UNIVERSITY, an Illinois nonprofit )
corporation; KENYON COLLEGE, an Ohio )
nonprofit corporation; LAKE FOREST )
COLLEGE, an Illinois nonprofit corporation; )
UNIVERSITY OF LYNCHBURG, a Virginia )
nonprofit corporation; LYON COLLEGE, )
an Arkansas nonprofit corporation; )
MCKENDREE UNIVERSITY, an Illinois )
nonprofit corporation; MCMURRY )
UNIVERSITY, a Texas nonprofit corporation; )
MILLS COLLEGE, a California nonprofit )
corporation; MILLSAPS COLLEGE, )
a Mississippi nonprofit corporation; OHIO )
NORTHERN UNIVERSITY, an Ohio )
nonprofit corporation; OHIO WESLEYAN )
UNIVERSITY, an Ohio nonprofit corporation; )
PRINCETON THEOLOGICAL SEMINARY, )
a New Jersey nonprofit corporation; )
RANDOLPH-MACON ACADEMY, )
a Virginia nonstock corporation; THE )
TRUSTEES OF ROANOKE COLLEGE, )
a Virginia nonprofit corporation; ROLLINS )
COLLEGE, a Florida nonprofit corporation; )
ROSE-HULMAN INSTITUTE OF )

TECHNOLOGY, an Indiana nonprofit )
corporation; SCHREINER UNIVERSITY, )
a Texas nonprofit corporation; SHAW )
UNIVERSITY, a North Carolina nonprofit )
corporation; SHENANDOAH UNIVERSITY, )
a Virginia nonprofit corporation; SIMPSON )
COLLEGE, an Iowa nonprofit corporation; )
SOUTHWESTERN UNIVERSITY, a Texas )
nonprofit corporation; SPARTANBURG )
METHODIST COLLEGE, a South Carolina )
nonprofit corporation; ST. OLAF COLLEGE, )
a Minnesota nonprofit corporation; THIEL )
COLLEGE, a Pennsylvania nonprofit )
corporation; TRINITY UNIVERSITY, a Texas )
nonprofit corporation; UNION COLLEGE, )
a Kentucky nonprofit corporation; THE )
LUTHERAN UNIVERSITY ASSOCIATION, )
INC. dba VALPARAISO UNIVERSITY, an )
Indiana nonprofit corporation; WAGNER )
COLLEGE, a New York nonprofit corporation; )
TRUSTEES OF WHEATON COLLEGE, an )
Illinois special charter corporation; WILEY )
COLLEGE, a Texas nonprofit corporation; )
WILLIAM PEACE UNIVERSITY, a North )
Carolina nonprofit corporation; WILSON )
COLLEGE, a Pennsylvania nonprofit )
corporation; and THE COLLEGE OF )
WOOSTER, an Ohio nonprofit corporation, )
)
                Respondents, )
)
v. )
)
CERTAIN UNDERWRITERS AT LLOYD'S )
LONDON SUBSCRIBING TO POLICY )
NUMBER W2205F200301 EFFECTIVE )
MARCH 1, 2020 TO MARCH 1, 2021; )
CERTAIN UNDERWRITERS AT LLOYD'S )
LONDON SUBSCRIBING TO POLICY )
NUMBER B080110908U20 EFFECTIVE )

3

MARCH 1, 2020 TO MARCH 1, 2021; )
GUIDEONE NATIONAL INSURANCE )
COMPANY, an Iowa corporation; COLONY )
INSURANCE COMPANY, a Virginia )
corporation; ACE AMERICAN INSURANCE )
COMPANY, a Pennsylvania corporation; )
STARR SURPLUS LINES INSURANCE )
COMPANY, a Texas corporation; ARCH )
SPECIALTY INSURANCE COMPANY, )
a Missouri corporation; EVANSTON )
INSURANCE COMPANY, an Illinois )
corporation; ATEGRITY SPECIALTY )
INSURANCE COMPANY, a Delaware )
corporation; HDI GLOBAL INSURANCE )
COMPANY, an Illinois corporation; )
WESTPORT INSURANCE CORPORATION; )
a Missouri corporation; TOKIO MARINE )
AMERICA INSURANCE COMPANY, a New )
York corporation; ENDURANCE AMERICAN )
SPECIALTY INSURANCE COMPANY, a )
Delaware corporation; THE PRINCETON )
EXCESS AND SURPLUS LINES )
INSURANCE COMPANY, a Delaware )
corporation; MITSUI SUMITOMO )
INSURANCE COMPANY OF AMERICA, )
a New York corporation; HOMELAND )
INSURANCE COMPANY OF NEW YORK, )
a New York corporation; and DOES 1 through )
50, inclusive, )
  )
                     Petitioners. )
  )

     JOHNSON, J.—This case arises from an insurance coverage dispute based on losses allegedly caused by the COVID-19 pandemic. The issues in this case focus on two trial court orders. The Pierce County Superior Court denied the insurance companies' motion to dismiss based on forum non conveniens. Also, the

court issued an interstate antisuit injunction, enjoining the insurance companies from taking further action in a parallel case they initiated in Illinois state court. We accepted direct review and affirm.

FACTS

Sixteen insurance carriers (Insurers) issued identical "all risk" property insurance policies to over 130 institutions of higher education from across the country through the Educational & Institutional Insurance Administrators Inc. (EIIA). The EIIA is a nonprofit organization that provides risk management and insurance services to member institutions. As part of these services, the EIIA acquires and purchases insurance policies on behalf of the institutions. Clerk's Papers (CP) at 6534-39, 7411-16 (Pierce County Superior Court's order granting motion to enjoin defendants).

Sixty of these institutions of higher education (Colleges), three of which are located in Washington, filed suit against the Insurers in Pierce County Superior Court (Washington Action). The Colleges filed this action in their chosen forum, consistent with the policies' "suit against the company" clause, which states:

> It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law.

> The Company shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court.

CP at 2588, 4635.

In the Washington Action, the Colleges seek a declaratory judgment that their COVID-19 related losses are covered under the insurance policies and recovery for the Insurers' alleged breach of contract. EIIA is not a party to the Washington Action and has not suffered any alleged losses.

Several months after this action was commenced, two of the defendant Insurers here filed a complaint against EIIA in Illinois state court (Illinois Action),[1] seeking a declaratory judgment that the losses suffered by the Colleges are not covered by the policies.[2] CP at 7412. The Insurers then filed a third-party complaint and joinder in the Illinois Action, joining the Colleges and seeking declaratory relief regarding policy coverage. CP at 4337-59, 7412.

In the Washington Action, the Colleges moved to enjoin the Insurers from further pursuing the Illinois Action, relying on Washington's priority of action rule. The Insurers filed cross motions to dismiss the Washington Action for lack of personal jurisdiction and on forum non conveniens grounds. The Pierce County

---

[1] *Ace Am. Ins. Co. v. EIIA*, No. 2021CH05205 (Cir. Ct. of Cook County, Ill. 2021).

[2] The original complaint was filed by ACE American Insurance Company and Certain Underwriters at Lloyd's London Subscribing to Policy Number B080110908U20. CP at 4315. The Illinois complaint lists the other 14 insurance companies as "nominal [d]efendants." CP at 4316. The Colleges were not named in the original Illinois complaint.

Superior Court granted the Colleges' motion, enjoining the Insurers from any further action or proceedings in the Illinois Action, except that the Insurers are permitted to seek dismissal of the Illinois Action with prejudice. CP at 7414. The trial court denied the Insurers' motions to dismiss. CP at 7417-24. The Insurers sought direct discretionary review of these orders, which was granted.

ANALYSIS

I.      Forum Non Conveniens

A trial court's decision on a motion to dismiss based on forum non conveniens is reviewed for abuse of discretion. A trial court abuses its discretion when its "'decision is manifestly unreasonable or based upon untenable grounds or reasons.'" *In re Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004) (quoting *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

A plaintiff has the original choice to file their complaint in any court of competent jurisdiction, and courts generally do not interfere with the plaintiff's choice of forum. *Sales v. Weyerhaeuser Co.*, 163 Wn.2d 14, 19, 177 P.3d 1122 (2008) (citing *Baker v. Hilton*, 64 Wn.2d 964, 965, 395 P.2d 486 (1964) ("[T]he choice lies with the plaintiff in the first instance.")). The common law doctrine of forum non conveniens refers to the discretionary power of a court to decline jurisdiction "'when the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum.'" *Sales*, 163

Wn.2d at 20 (quoting *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 579, 555 P.2d 997 (1976)). The doctrine functions to limit the plaintiff's choice of forum to prevent them from """"inflicting upon [the defendant] expense or trouble not necessary to [the plaintiff's] own right to pursue [their] remedy.""" *Sales*, 163 Wn.2d at 20 (first two alterations in original) (quoting *Myers v. Boeing Co.*, 115 Wn.2d 123, 128, 794 P.2d 1272 (1990) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947))).

Several private- and public-interest factors are relevant to this analysis. These factors include ease of access to evidence, availability of compulsory process for unwilling witnesses, cost associated with litigating the case in the forum, and the enforceability of a judgment if one is obtained. Courts will also consider whether the plaintiff's choice of forum is so inconvenient that it tends to "'vex,' 'harass,' or 'oppress' the defendant . . . . But unless the balance is *strongly in favor* of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Johnson*, 87 Wn.2d at 579 (emphasis added) (quoting *Gulf Oil*, 330 U.S. at 508).

In this case, an additional consideration is the existence of a "service of suit" clause and a "suit against the company" clause in the insurance policies. The parties dispute the meaning of these clauses. The Colleges argue these clauses defeat the Insurers' forum non conveniens argument, reasoning that the Insurers

contractually waived their right to assert such an argument because they knew of the inconvenience when they entered the agreement. The Insurers counter that nothing in the insurance policies precludes them from seeking to dismiss the Colleges' action under the doctrine of forum non conveniens.

Turning first to the insurance clause, Washington courts interpret language in insurance policies as a matter of law. If the policy language is clear and unambiguous, we must enforce it as written. When interpreting an insurance contract, we consider the policy as a whole, according to the entirety of its terms and conditions. The policy is given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. And any potentially conflicting clauses will be harmonized to give effect to all of the contract's provisions. *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 200 Wn.2d 315, 320, 336, 516 P.3d 796 (2022); *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 183 Wn.2d 485, 489, 352 P.3d 790 (2015).

Here, the two insurance provisions at issue are the "suit against the company" clause (Clause 36) and the "service of suit" clause (Clause 41). Clause 36 states:

> It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder or in the event of any other dispute relating to this policy, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent

jurisdiction within the United States and will comply with all of the requirements necessary to give such court jurisdiction and all matters hereunder shall be determined in accordance with the law and practice of such court, not including the court's law regarding choice of law. *The Company shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court.*

CP at 2588 (emphasis added), 4635 (emphasis added) (ACE American Insurance Company policy containing identical language). And Clause 41 provides:

[I]t is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. *Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action* in any court of competent jurisdiction in the United States, to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that . . . in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

CP at 2538 (emphasis added), 4636 (emphasis added) (ACE insurance policy containing substantially similar language).

All 60 plaintiff-colleges, with the approval of EIIA, exercised their right under Clause 36 when they selected Pierce County Superior Court as their chosen forum to hear this coverage dispute. CP at 7414 (Pierce County Superior Court order) ("EIIA (like Plaintiffs) exercised its right under Section 36 of the ACE

policy to request that Defendant Insurers submit to this Court's jurisdiction."), at 4312 (declaration of EIIA representative) ("Plaintiffs chose to bring their coverage action in Washington and EIIA supports that choice. . . . [EIIA] request[ed] that Defendant Insurers submit to this Court's jurisdiction in Washington state. . . . [and] further requested that Defendant Insurers dismiss the improperly filed [Illinois Action]."). The Colleges assert that once they invoked this right under Clause 36, the clause dictates that the Insurers "will submit" to the jurisdiction of that chosen forum and "shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove" that action. CP at 2588. The Colleges argue this provision in Clause 36 bars the Insurers from seeking to alter the Colleges' chosen forum. And by filing a motion to dismiss the Colleges' action based on the argument that the Insurers' chosen forum is more convenient is an attempt to alter the Colleges' choice in violation of Clause 36.

The Insurers counter that the insurance policy does not prohibit them from seeking to dismiss the Colleges' action based on forum non conveniens. They argue Clause 36 and 41 are merely permissive consent to jurisdiction clauses, which do not prevent them from bringing a forum non conveniens argument to try to change the Colleges' chosen forum. For support, they cite to several out-of-state cases in which the courts held that the relevant service of suit clauses did not preclude the application of the doctrine of forum non conveniens.

11

Even if we were inclined to agree with the reasoning of these out-of-state cases,[3] they do not support the Insurers' argument because these cases involve service of suit clauses materially distinct from the one at issue here. Specifically, none of the clauses in these cases include language that limits or prohibits the insurers from seeking to transfer, change venue, or remove an action, as is present in the contract clause in this case. *See* CP at 2588 (Clause 36) ("The Company shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court."). This language is determinative here, and absent similar contract language, the out-of-state cases are unpersuasive to our analysis.

The Insurers next argue that courts must harmonize contract clauses that seem to conflict in order to give effect to all the contract's provisions, and when read together, clauses 36 and 41 do not waive the Insurers' right to seek dismissal under forum non conveniens because Clause 41 expressly states the Insurers' right to remove or seek to transfer the case to another court is not waived. CP at 2538 ("Nothing in this clause constitutes or should be understood to constitute a waiver of the [Insurers'] rights to commence an action in any court of competent

---

[3] *Appalachian Ins. Co. v. Superior Ct.*, 162 Cal. App. 3d 427, 431, 208 Cal. Rptr. 627 (1984); *Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 278 Ill. App. 3d 175, 178, 662 N.E.2d 467, 214 Ill. Dec. 901 (1996); *Brooke Grp. Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534, 663 N.E.2d 635, 640 N.Y.S.2d 479 (1996); *Columbia Cas. Co. v. Bristol-Myers Squibb Co.*, 215 A.D.2d 91, 95, 635 N.Y.S.2d 173 (1995); *Cannelton Indus., Inc. v. Aetna Cas. & Sur. Co. of Am.*, 194 W. Va. 186, 200, 460 S.E.2d 1 (1994) (plurality opinion).

jurisdiction in the United States, to remove . . . or to seek a transfer of a case to another court."). The Colleges counter that the Insurers' interpretation contradicts the unambiguous language of both clauses, and we agree.

Clause 41 states that "[*n*]*othing in this clause* constitutes or should be understood to constitute a waiver" of the Insurers' right to remove or seek to transfer the case. CP at 2538 (emphasis added). Importantly, Clause 41 does not reference, override, limit, or curb any language in Clause 36. These two clauses do not conflict, and no ambiguity exists. Under Clause 41, the Insurers have the right to commence an action against the Colleges in any court of competent jurisdiction in the United States. And under these circumstances, where the Insurer is the first to file an action, the Insurers could seek removal or transfer, but that situation does not exist here. Under Clause 36, the Colleges have the right to bring an action against the Insurers in any court of competent jurisdiction in the United States. Under these circumstances, the Insurers are prohibited from seeking to transfer, change venue, or remove the action to another court. In other words, when the Colleges commence an action against the Insurers, as they did here, they have the contractual right to choose the forum in which the dispute is heard *free from the threat of alteration by the Insurers*.

Further, a principle of contract interpretation is that we read the contract language to give meaning and effect to all provisions. The Insurers' interpretation

would have us ignore Clause 36's mandatory language and clear prohibition by essentially rewriting the clause as merely a permissive consent to jurisdiction provision and not a forum selection clause. And doing so would render meaningless the prohibition that the Insurers "shall not transfer, change venue, or remove, or seek to transfer, change venue, or remove any lawsuit filed by the Insured in any such court." CP at 2588. We agree with the Colleges' position that the contract is not ambiguous and that Clause 36 is a forum selection clause that grants them the contractual right to bring an action against the Insurers in the forum of their choice without threat of alteration from the Insurers.

The Insurers further argue that the private and public interest factors relevant to a forum non conveniens analysis establish that Illinois is the more convenient forum to litigate this coverage dispute. Describing it as the "fundamental problem before this court," counsel for the Insurers argued that because the majority of the plaintiff-colleges are located "east of the Mississippi [River]," that is where the dispute should be heard. Wash. Sup. Ct. oral arg., *Pac. Lutheran Univ. v. Certain Underwriters at Lloyd's London*, No. 100752-3 (June 27, 2023), 1 min., 46 sec. to 1 min., 48 sec.; 16 min., 15 sec. to 16 min, 16 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (arguing that Illinois is the more convenient forum because the dispute's "center of gravity is so clearly in America's heartland" (at 3 min., 10 sec. to 3 min., 13 sec.) and "Illinois

is a heartland state and Cook County is a heartland court" (at 16 min., 57 sec. to 17 min., 01 sec.)). Relying on this geographic argument, the Insurers assert that the private interest factors, such as the cost of discovery, access to evidence, and availability of out-of-state witnesses, weigh in favor of dismissing the Washington Action. The Insurers also argue that because most of the Colleges are located in "America's heartland," Washington has no meaningful connection to this controversy. That 57 of 60 out-of-state colleges joined and support the forum selected undermines this argument.

Also, the Colleges counter that the Insurers do not identify what evidence cannot easily be brought to Washington. The complaint seeks a declaratory judgment, where coverage is determined under the policy as a matter of law. And, if coverage is triggered, proving damages is inherent in establishing recovery. The same burden exists in whatever forum is chosen.

Most importantly, the Colleges have the contractual right to select their desired forum and all 60, including the 40 institutions located east of the Mississippi River, elected to have this dispute heard in Pierce County Superior Court. The Insurers have not shown that the relevant factors justify denying the Colleges their contractual right. The court did not abuse its discretion in electing to enforce the forum selection clause by denying the Insurers' motion to dismiss based on forum non conveniens, and we affirm.

II.     Injunction

A court's decision to grant an injunction is reviewed for abuse of discretion. The decision is presumed to be correct and will be sustained absent an affirmative showing of error. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 446, 327 P.3d 600 (2013). Determining the appropriate legal standard and assessing whether the trial court applied the correct legal standard are both issues of law reviewed de novo. *In re Dependency of M.H.P.*, 184 Wn.2d 741, 752-53, 364 P.3d 94 (2015).

The Pierce County Superior Court granted the Colleges' motion to enjoin the Insurers, relying on Washington's priority of action rule. The rule generally provides that "the first court to obtain jurisdiction over a case possesses exclusive jurisdiction to the exclusion of other coordinate courts" until the controversy is resolved. *Am. Mobile Homes of Wash., Inc. v. Seattle-First Nat'l Bank*, 115 Wn.2d 307, 317, 796 P.2d 1276 (1990). The priority of action rule emanates from common law and is based on "'an accepted principle that, when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of co-ordinate authority is at liberty to interfere with its action.'" *Am. Mobile*, 115 Wn.2d at 316 (quoting *State ex rel. Greenberger v. Superior Ct.*, 134 Wash. 400, 401, 235 P. 957 (1925)). We have acknowledged that

a court may enforce this rule by enjoining parties from further action in the second-filed case. *Am. Mobile*, 115 Wn.2d at 317-18.

Washington's priority of action rule is applicable where the competing cases are identical as to subject matter, relief, and parties, i.e., are parallel actions. If the competing actions are parallel, as a general rule, the later-filed action must abate to allow the action that was filed first to continue until it reaches a resolution.

Where the actions are not parallel, courts will apply the priority of action rule based on equitable considerations. *Am. Mobile*, 115 Wn.2d at 320-23 (considering equitable factors, such as "convenience of witnesses and the interests of justice, the parties' possible motivations for their filing decisions as determined from the surrounding circumstances, and the presence of venue agreements between some but not all of the various parties"). Courts also consider the rule's underlying purpose, which is that it "'tends to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process.'" *Am. Mobile*, 115 Wn.2d at 317 (quoting *Sherwin v. Arveson*, 96 Wn.2d 77, 80, 633 P.2d 1335 (1981)). The priority of action rule has been recognized and applied where similar or parallel actions are filed in multiple Washington counties, in a federal district court in

17

Washington and a Washington state court,[4] and in an administrative agency

tribunal and a Washington state court.[5]

Our early cases establish that it is within a trial court's authority and

discretion to issue an injunction under the circumstances here.[6] They do not

compel the conclusion that the Pierce County Superior Court lacked authority or

discretion to issue an injunction nor do they establish a rule that a court cannot

enjoin a party from pursuing an out-of-state action.

Generally speaking, an injunction is an equitable remedy, directed at a party

or parties, that requires them to do or refrain from doing specified acts. 15

DOUGLAS J. ENDE, WASHINGTON PRACTICE, CIVIL PROCEDURE § 44:1, at 252-53

---

[4] *Macre v. Weyerhaeuser S.S. Co.*, 24 F. Supp. 282 (W.D. Wash. 1938); *Bunch v. Nationwide Mut. Ins. Co.*, 180 Wn. App. 37, 321 P.3d 266 (2014) (reversing trial court's order denying motion to stay because the priority of action rule required staying the state proceeding until resolution of the earlier-filed, parallel suit in federal court).

[5] *City of Yakima v. Int'l Ass'n of Fire Fighters*, 117 Wn.2d 655, 675, 818 P.2d 1076 (1991).

[6] Our cases discussing other remedies where an earlier-filed, out-of-state case is pending also establish that it is within a court's authority and discretion to issue an equitable remedy. For instance, in *Townsend v. Rosenbaum*, 187 Wash. 372, 393, 60 P.2d 251 (1936), and *Rushlight v. McLain*, 28 Wn.2d 189, 182 P.2d 62 (1947), we established that Washington courts are not required to stay or dismiss proceedings where an earlier-filed, similar action is pending in another state. *Townsend*, 187 Wash. at 393 (stating that the "fact that jurisdiction has been acquired in a subsequent case in one state during the pendency of another action in another state does not require the abatement of the later action"); *Rushlight*, 28 Wn.2d at 196 (concluding a Washington court was not required to estop the parties from pursuing the Washington action where an earlier-filed, parallel action was first filed in Oregon, but the court could "'if it [chose], grant a stay'" (quoting 3 JOSEPH H. BEALE, A TREATISE ON THE CONFLICT OF LAWS § 619.1, at 1662 (1935))); *see also State ex rel Milwaukee Lumber Co. v. Superior Ct.*, 147 Wash. 615, 617, 266 P. 1054 (1928) (concluding the court was not required to stay its proceedings pending the resolution of an earlier-filed, parallel case in a federal district court in Idaho, and noting that it is within a trial court's discretion to issue a stay in its own proceedings until resolution of an earlier-filed, parallel action in another state).

(3d ed. 2023). In this context, the object and purpose of an injunction "is to preserve and keep things *in statu quo* until otherwise ordered, and to restrain an act which, if done, would be contrary to equity and good conscience." *Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 415, 63 P.2d 397 (1936) (plurality opinion).

Our early cases recognize this discretionary power and its proper exercise. In *Rader v. Stubblefield*, 43 Wash. 334, 86 P. 560 (1906), and *Northern Pacific Railway Co. v. Richey & Gilbert Co.*, 132 Wash. 526, 232 P. 355 (1925), we affirmed injunctions that prohibited a party from pursuing an out-of-state action based on equitable factors. As these cases demonstrate, directing a party to refrain from pursuing a case in another jurisdiction to prevent an act contrary to equity and good conscience goes to the purpose of an injunction as an equitable action.

Also, these cases establish that an interstate antisuit injunction is an available remedy under certain circumstances. We have stated that because an injunction "is pointed solely at the party and *does not extend to the tribunal where the suit or proceeding is pending*, it is wholly immaterial that the party is prosecuting [their] action in the courts of a foreign state or country." *Rader*, 43 Wash. at 352 (emphasis added). The parties do not dispute that a court has the authority to enjoin further action in an out-of-state case. The disagreement here is whether the injunction was proper.

19

In *Rader*, we upheld a decision to enjoin "'persons within their jurisdiction from instituting legal proceedings *in other states*, or from further proceedings in actions already begun'" where the equities so require. 43 Wash. at 351 (emphasis added) (quoting 1 JAMES L. HIGH, A TREATISE ON THE LAW OF INJUNCTIONS § 106, at 117 (1905)) . We stated,

> "[T]he jurisdiction is founded on the clear authority vested in courts of equity *over persons* within the limits of their jurisdiction and amenable to process to restrain them from doing acts which will work wrong and injury to others, and are therefore *contrary to equity and good conscience*. As the decree of the court in such cases is pointed solely at the party and does not extend to the tribunal where the suit or proceeding is pending, it is wholly immaterial that the party is prosecuting his action in the courts of a foreign state or country."

*Rader*, 43 Wash. at 352 (emphasis added) (quoting *Dehon v. Foster*, 86 Mass. (4 Allen) 545, 550 (1862)). The underlying purpose of this authority is to "'restrain[] persons within its own jurisdiction from using foreign tribunals as instruments of wrong and oppression.'" *Rader*, 43 Wash. at 351 (quoting HIGH, *supra*, at 118). There, we affirmed a trial court's ruling enjoining a party from pursuing a later-filed, similar action in Oregon, reasoning that permitting the litigant to pursue the Oregon action would "permit her to perform *a most unconscionable and inequitable act*, to the great prejudice and injury" of the other party. *Rader*, 43 Wash. at 353 (emphasis added).

Similarly, in *Northern Pacific Railway*, we affirmed an injunction prohibiting the plaintiff from pursuing a later-filed, parallel action in Minnesota. In

that case, the plaintiff initiated an action against the respondent in a Washington state court. After the action was successfully removed to a federal district court in Washington, the plaintiff filed an identical action in a Minnesota state court. The respondent filed an injunction motion in Washington, seeking to enjoin the plaintiff from pursuing the Minnesota action. The court concluded the equities all weighed in favor of granting the injunction: (1) the Minnesota suit was not brought in good faith, (2) respondent would be subjected to enormous expense and the ends of justice would not be met by transferring the place of litigation from Washington to Minnesota, (3) any evidence from eastern states could be obtained by deposition, and (4) the filing of the suit in Minnesota was "a needless and vexatious proceeding brought for the *wrongful and unjust purpose of harassing and vexing* respondent." *N. Pac. Ry. Co.*, 132 Wash. at 531 (emphasis added).

Our cases also instruct that other relevant factors may include whether the out-of-state action was brought in bad faith or "for the wrongful and unjust purpose of harassing and vexing" the other party, the convenience of witnesses and the interests of justice, and the ability to obtain out-of-state evidence. *N. Pac. Ry. Co.*, 132 Wash. at 530-31. We may also consider the presence of venue agreements in the parties' contract and the parties' possible motivations for their filing decisions as determined from the surrounding circumstances. *Am. Mobile*, 115 Wn.2d at 320-23. These factors are not exclusive of other considerations.

The Insurers argue, in the alternative, that we adopt a different standard: the "foreign antisuit injunction" standard, which is a standard applied in some federal jurisdictions when determining whether to enjoin a party from pursuing a parallel action in another country. *See* Mot. for Discr. Rev. Under that standard, similar to our cases, courts have the same authority and discretion to issue an injunction and generally will balance equitable factors with international comity to determine whether an injunction is appropriate. Those cases, significantly, recognize that the same principles of discretion and equity guide the decision, and we find no substantive difference under our standard of review.[7]

Under our cases, a Washington court may enjoin parties in an action before it from pursuing an out-of-state action where a clear equity demands. This analysis is necessarily fact specific, and it is within the trial court's discretion to determine whether the remedy is appropriate. Here, the important factors relied on by the superior court are the timing in which the actions were filed, the parallelism of the

---

[7] Washington's legal standard is supported by the approach taken in other states. *See, e.g.*, *Three Sisters Petrol., Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002); *Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 706-07, 59 P.3d 231, 128 Cal. Rptr. 2d 172 (2002); *Auerbach v. Frank*, 685 A.2d 404, 409 (D.C. 1996) (indicating interstate antisuit injunction is appropriate when "needed 'to prevent manifest wrong and injustice'" (quoting *Total Minatome Corp. v. Santa Fe Minerals, Inc.*, 851 S.W.2d 336, 339 (Tex. App. 1993))); *Pfaff v. Chrysler Corp.*, 155 Ill. 2d 35, 50, 610 N.E.2d 51, 182 Ill. Dec. 627 (1992) (stating this remedy is proper "when a clear equity is presented which requires such restraint to prevent a manifest wrong and injustice"), *overruled on other grounds by ABN AMRO Mortg. Grp., Inc. v. McGahan*, 237 Ill. 2d 526, 931 N.E.2d 1190, 342 Ill. Dec. 7 (2010); *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996) (holding an interstate antisuit injunction is appropriate where "'a clear equity demands'" (quoting *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986))).

actions, and the presence of a forum selection clause that established the contractual right of the Colleges to choose the forum in which their case is heard. We agree. Under these circumstances, the trial court properly issued the injunction in order to protect those interests.

The forum selection clause established the Colleges' contractual right to choose the forum in which their case is heard. By filing the Illinois Action, the Insurers seemingly attempted to circumvent the Colleges' contractual right to have the action they initiated heard in their chosen forum of Washington. Based on the circumstances of this case, the superior court applied the correct legal standard and did not abuse its discretion.[8]

## CONCLUSION

We affirm the denial of the motion to dismiss on forum non conveniens grounds and the issuance of the injunction.

---

[8] We have considered all other arguments and, given our conclusion, need not address them.

 

 

Johnson, J.

WE CONCUR:

González, C.J.

Gordon McCloud, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

No. 100752-3


STEPHENS, J. (dissenting in part)—I concur with the majority insofar as it affirms the trial court's denial of the petitioners' (Insurers') motion to dismiss. However, because I would reach this result differently, I write to articulate what I view as the proper approach to the forum non conveniens analysis. As to the antisuit injunction imposed by the trial court, I dissent from both the analysis and the result reached. The majority endorses the trial court's conflation of the priority of action doctrine and the analysis governing interstate antisuit injunctions. The latter, properly applied, places a greater emphasis on judicial restraint and comity, and demands an exceptional justification before a court of this state will interfere with a party's ability to proceed in the courts of another sovereign. I do not believe the respondents (Colleges) satisfied their burden in this regard, and I would therefore vacate the injunction preventing the Insurers from proceeding with their Illinois-filed action.

DISCUSSION

I.    The contract permits the Insurers to raise a claim of forum non conveniens, but clause 36 precludes them from arguing that their personal inconvenience weighs in favor of dismissal

The majority finds no conflict between clauses 36 and 41 of the contract because it reads clause 41 as pertaining only to those suits in which the Insurers themselves are the plaintiffs. The majority emphasizes language in clause 41, which reads, "[N]othing in this clause constitutes or should be understood to constitute a waiver of the [Insurer]'s rights to commence an action." Clerk's Papers (CP) at 2538. But this ignores the rest of the clause, which, critically, says, "[Nothing in this clause constitutes . . . a waiver of the [Insurers' ability] . . . to *remove an action to a United States District Court* or to seek transfer of a case to another court as permitted by the laws of the United States or of any state in the United States." *Id.* (emphasis added). Only defendants may seek removal to federal court, per 28 U.S.C. § 1446, so clause 41—on its face—addresses more than the Insurers' rights as a potential plaintiff. There is a clear textual conflict between clause 36, under which the Colleges may file suit in their court of choice with a guarantee that the Insurers will not seek removal or transfer, and clause 41, which guarantees to the Insurers the right to seek removal or transfer.

*Pac. Lutheran Univ. v. Certain Underwriters at Lloyd's London*, No. 100752-3
(Stephens, J., dissenting in part)

The clauses, read together, create ambiguity as to the parties' rights under the contract. In such cases, we resolve the ambiguity "'against the drafter-insurer and in favor of the insured.'" *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115 (2000) (quoting *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 427-28, 951 P.2d 250 (1998)). Accordingly, I would construe clause 36 as guaranteeing to the Colleges a right to bring claims in the jurisdiction of their choice and hold that the Insurer has waived its right to seek transfer, change of venue, or removal in suits initiated by the insureds. However, this does not end our inquiry. While the proper analysis for a motion to transfer or change venue shares elements with the forum non conveniens analysis—namely, the convenience to the parties and potential burdens in presenting their claims and defenses—they are different, and a waiver of the right to seek transfer does not clearly preclude the Insurers' ability to seek dismissal on forum non conveniens grounds. Thus, we must decide what effect, if any, the waiver has on the Insurers' ability to argue for dismissal on the basis of forum non conveniens.

As the majority correctly notes, the proper analysis of a motion to dismiss for forum non conveniens involves a weighing of both private and public factors, and we review the trial court's decision for abuse of discretion. *See* majority at 8 (citing *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 579, 555 P.2d 997 (1976)). However, a question hereto unanswered by courts of this state is what effect, if any,

3

a contractual provision waiving transfer or removal has on the court's ability to consider forum non conveniens. As noted elsewhere, the question of whether an action should be dismissed under the doctrine of forum non conveniens is not wholly within the parties' ability to waive because the court necessarily retains discretion to dismiss a case if the public interest so requires and may even do so sua sponte. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507-08, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)); *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) ("[There is a] long-approved practice of permitting a court to transfer a case sua sponte under the doctrine of *forum non conveniens* . . . so long as the parties are first given the opportunity to present their views on the issue."); *see also W.R. Grace & Co. v. Hartford Accident & Indem. Co.*, 407 Mass. 572, 581, 555 N.E.2d 214 (1990) ("Because the doctrine of forum non conveniens is designed to serve the interests of the public as well as interests of litigants, a private agreement between parties cannot preclude consideration of the public interest component of that doctrine."). Accordingly, I would hold that the parties here could not contract to wholly preclude the trial court from considering dismissal for forum non conveniens, at least not on the basis of the so-called public factors.

It would, however, be inequitable to allow the Insurers to assert their personal inconvenience. I would adopt the approach articulated by the Massachusetts

4

Supreme Judicial Court in *W.R. Grace & Co.*, 407 Mass. 572. There, the court analyzed a similar "service of suit" clause in an insurance contract and held that it precluded the insurer from asserting its own inconvenience in seeking dismissal based on forum non conveniens. *Id.* at 580-81. However, it held that all other private factors, such as the convenience to witnesses, remain relevant to the claim of forum non conveniens. *Id.*; *see also Oxford Glob. Res., LLC v. Hernandez*, 480 Mass. 462, 474, 106 N.E.3d 556 (2018) ("A forum selection provision, however, has some bearing on the consideration by a judge of the private factors insofar as, by agreeing to a particular forum, the defendant waives any objection to the forum based on the inconvenience of the forum to him or her." (citing *W.R. Grace & Co.*, 555 N.E.2d 214)).

To summarize, the proper analysis of the motion to dismiss for forum non conveniens in this case would weigh the public and private factors, excluding consideration of the inconvenience to the Insurers themselves. Weighing the remaining factors, the trial court did not abuse its discretion in denying the Insurers' motion to dismiss based on forum non conveniens. Accordingly, I concur in the majority's decision to affirm the court's denial of the Insurers' motion to dismiss.

II.     The trial court applied the wrong test in deciding whether to issue an interstate antisuit injunction and therefore abused its discretion

Our priority of action doctrine holds that "'when a court of competent jurisdiction has become possessed of a case . . . no court of co-ordinate authority is at liberty to interfere with its action.'" *Am. Mobile Homes of Wash., Inc. v. Seattle-First Nat'l Bank*, 115 Wn.2d 307, 316, 796 P.2d 1276 (1990) (quoting *State ex rel. Greenberger v. Superior Ct.*, 134 Wash. 400, 401, 235 P. 957 (1925)).  But foreign courts are not "courts of coordinate authority," a term referring to only those courts established by a common sovereign.  *See, e.g.*, *Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 707, 59 P.3d 231 (2002) ("The first-filed rule 'was never meant to apply where the two courts involved are not courts of the same sovereignty.'" (internal quotation marks omitted) (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981))); *Gannon v. Payne*, 706 S.W.2d 304, 305-06 (Tex. 1986) (contrasting the power of Texas courts to "protect [their] jurisdiction by enjoining the parties to a suit subsequently filed in another court of *this* state" (emphasis added) with the more limited power to enjoin parties from proceeding in foreign jurisdictions, which "should be exercised sparingly and only by reason of very special circumstances").  Stated differently, priority of action is an intrastate doctrine, and the trial court erred by applying the doctrine to enjoin the Insurers from proceeding with their action in Illinois.

6

Injunctive relief that impedes the right of a party to litigate in a foreign state is a very rare remedy, and our cases apply it sparingly. *See N. Pac. Ry. Co. v. Richey & Gilbert Co.*, 132 Wash. 526, 531, 232 P. 355 (1925) (parties under jurisdiction of Washington courts properly enjoined from out of state litigation where the foreign litigation was "needless and vexatious"); *see also Rader v. Stubblefield*, 43 Wash. 334, 351, 86 P. 560 (1906) (parties under jurisdiction of Washington courts properly enjoined from out of state litigation where the foreign litigation would "'result in injury and fraud'" or would be used as an "'instrument[] of wrong and oppression'" (quoting 1 JAMES L. HIGH, A TREATISE ON THE LAW OF INJUNCTIONS § 106, at 118 (1905)); *accord Arpels v. Arpels*, 8 N.Y.2d 339, 341, 170 N.E.2d 670, 207 N.Y.S.2d 663 (1960) ("The use of the injunctive power to prohibit a person from resorting to a foreign court is a power rarely and sparingly employed . . . . Accordingly, an injunction will be granted only if there is danger of fraud or gross wrong being perpetrated on the foreign court."); *Advanced Bionics Corp.*, 29 Cal. 4th at 708 ("[E]njoining proceedings in another state requires an exceptional circumstance that outweighs the threat to judicial restraint and comity principles."); *Pfaff v. Chrysler Corp.*, 155 Ill. 2d 35, 60, 610 N.E.2d 51, 182 Ill. Dec. 627 (1992) (noting a "strong policy against enjoining the prosecution of a foreign action merely because of inconvenience or simultaneous, duplicative litigation, or where a litigant simply wishes to avail himself of more favorable law"), *overruled on other grounds by ABN*

7

*AMRO Mortg. Grp., Inc. v. McGahan*, 237 Ill. 2d 526, 931 N.E.2d 1190, 342 Ill.
Dec. 7 (2010).

Courts have employed different criteria to determine when parallel litigation
is unduly burdensome, vexatious, or harassing to warrant an injunction, and most
states that have spoken on the issue accept that avoiding a multiplicity of suits is a
valid basis for such an injunction. *See Advanced Bionics Corp.*, 29 Cal. 4th at 711-
12 (Moreno, J., concurring) (collecting cases). But while there is no precise
quantification of when "multiplicity" merits an injunction, there seems to be
agreement that a single parallel proceeding is insufficient. *See Christensen v.
Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986) ("A single parallel proceeding
in a foreign forum . . . does not constitute a multiplicity nor does it, in itself create a
clear equity justifying an anti-suit injunction."); *see also Pfaff*, 155 Ill. 2d at 60 (an
antisuit injunction is not issued "merely because of inconvenience or simultaneous,
duplicative litigation . . . ."). Moreover, the analysis does not turn on any application
of "priority" among actions insofar as who filed first. The trial court conflated the
priority of action doctrine with the proper analysis for interstate injunctions, and the
majority does the same. I would maintain the distinction between these discrete
analyses and recognize that a single parallel proceeding in a foreign court—that does
not raise concerns about fraud or gross wrongdoing—does not justify enjoining a
party from pursuing its rights. Absent an additional showing that the second action

is vexatious, oppressive, or fraudulent, as the precedent describes, there is no "priority" that overcomes the strong policy of nonintervention in foreign litigation. Accordingly, I would vacate the injunction prohibiting the Insurers in this case from proceeding with their Illinois-filed action.

I respectfully concur in part and dissent in part.

Stephens, J.

Madsen, J.

Bender, J.P.T.